People v Morrison (2018 NY Slip Op 04777)

People v Morrison

2018 NY Slip Op 04777 [32 NY3d 951]

June 28, 2018

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, November 7, 2018

[*1]

The People of the State of New York, Appellant,
v
William Morrison, Respondent.

Argued June 5, 2018; decided June 28, 2018

People v Morrison, 148 AD3d 1707, affirmed.

APPEARANCES OF COUNSEL

Barbara D. Underwood, Attorney General, New York City (Hannah Stith Long and Nikki Kowalski of counsel), for appellant.
Mary R. Humphrey, New Hartford, for respondent.

{**32 NY3d at 952} OPINION OF THE COURT

Memorandum.
The order of the Appellate Division should be affirmed.
The trial court's failure to provide counsel with meaningful notice of a substantive jury note is a mode of proceedings error that requires reversal (see People v Mack, 27 NY3d 534, 538 [2016], rearg denied 28 NY3d 944 [2016]; People v Nealon, 26 NY3d 152, 156-157 [2015]). "[M]eaningful notice 'means notice of the actual specific content of the jurors' request' " (Mack, 27 NY3d at 538, quoting People v O'Rama, 78 NY2d 270, 277 [1991]). Although the record demonstrates that "defense counsel was made aware of the existence of the note, there is no indication that the entire contents of the note were shared with counsel" (People v Walston, 23 NY3d 986, 990 [2014]). We therefore reject the People's argument that defense counsel's awareness of the existence and the "gist" of the note satisfied the court's meaningful notice obligation, or that preservation was required. "Where the record fails to show that defense counsel was apprised of the specific, substantive contents of the note—as it is in this case—preservation is not required" (id.).
Moreover, "[w]here a trial transcript does not show compliance with O'Rama's procedure as required by law, we cannot assume that the omission was remedied at an off-the-record conference that the transcript does not refer to" (id.). In other words, "[i]n the absence of record proof that the trial court complied with its [meaningful notice [*2]obligation] under CPL 310.30, a mode of proceedings error occurred requiring reversal" (People v Tabb, 13 NY3d 852, 853 [2009]). We again decline "to disavow our holding in Walston . . . that imposes an affirmative obligation on a trial court to create a record of compliance under CPL 310.30 and O'Rama" (People v Silva, 24 NY3d 294, 300 [2014], rearg denied 24 NY3d 1216 [2015]; see People v Parker, 
32 NY3d 49 [2018] [decided today]).
{**32 NY3d at 953}The jury note marked as court exhibit 9, which is the only note at issue on this appeal, was not ministerial.[FN*] Even assuming for the sake of argument that the jury was requesting instruction on whether to continue deliberating or to return the next morning—a request that would require only a ministerial response—the note also stated that the jury had reached a decision on counts two and three but had "a lot of work to do" on count one. A note that informs the court that the jury has reached a verdict on two counts but is struggling with another count is not a note that is " 'wholly unrelated to the substantive legal or factual issues of the trial' " (People v Hameed, 88 NY2d 232, 241 [1996], quoting People v Harris, 76 NY2d 810, 812 [1990]) of which the trial court had no obligation to provide meaningful notice to counsel (see People v Wallace, 27 NY3d 1037, 1039 [2016]; Nealon, 26 NY3d at 161; People v Ochoa, 14 NY3d 180, 188 [2010]). Counsel, upon receiving meaningful notice, may have requested a partial verdict or a modified Allen charge, which was the response the trial court ultimately provided to the jury.
To the extent the People contend that the presence of media in the courtroom justified the trial court's failure to provide counsel with meaningful notice, that argument is without merit. The O'Rama Court recognized that "special circumstances," such as concern about sharing an individual juror's note with the rest of the jury, might warrant departure from the O'Rama procedure, but the Court found it "difficult to imagine a situation in which a court would be justified in declining to show or read a juror's note to counsel" (O'Rama, 78 NY2d at 278-279). If the trial court was concerned about media influence, it could have simply asked counsel to confirm on the record that they had read the note.
" '[T]hough it hardly needs restating, we underscore the desirability of adherence to the procedures outlined in O'Rama' " (Nealon, 26 NY3d at 163, quoting People v Kisoon, 8 NY3d 129, 135 [2007]).

[*3]Chief Judge DiFiore, Ch. J. (dissenting). For the reasons stated in my dissent in People v Parker (32 NY3d 
49 [2018] [decided today]), I would not apply a per se rule of reversal where there is sufficient ambiguity in the record as to whether{**32 NY3d at 954} defense counsel received meaningful notice of the content of jury note seven (court exhibit 9). As noted by Judge Garcia's dissent in this case, the trial court demonstrated a pattern of compliance with the notice procedures mandated by CPL 310.30 and People v O'Rama (78 NY2d 270 [1991]). In addition, in responding to the jury note at issue, which sought guidance as to whether to continue deliberations, the court told the jury that "we as a group would like you to keep working." Under these circumstances, there is a significant ambiguity in the record before us and a reconstruction hearing is warranted (see People v Velasquez, 1 NY3d 44, 49 [2003]). Thus, I also join part IV of Judge Garcia's dissenting opinion.
Garcia, J. (dissenting). Defendant confessed to forcibly raping a 90-year-old Alzheimer's patient, and his confession was corroborated by DNA evidence. Today, the Court reverses defendant's conviction (majority op at 
952), and the convictions of two other defendants (People v Parker, 32 NY3d 
49, 52 [2018] [decided today]), based solely on an unpreserved claim. The majority forgives defendant's failure to preserve his challenge by relying on a record-making deficiency—the trial court declined to read a jury note into the record—even though defense counsel was aware of the note at issue and was informed that the trial court would not read the note aloud. The record also supplies reason to believe that defense counsel received the note and read its contents.
Rather than simply asking for the contents of the note, or lodging any form of an objection, defendants in these circumstances are better off—under this Court's precedent—remaining silent and hoping for an acquittal; in the event of an unfavorable verdict, their claim will secure an automatic reversal on appeal. In its current form, the "mode of proceedings" doctrine ignores basic notions of fairness and common sense. It enables gamesmanship, encouraging litigants to "manipulate the system by remaining silent while error is committed, only to complain of it later" (People v Walston, 23 NY3d 986, 992 [2014, Smith, J., concurring]). And it serves only to undermine the important, fundamental purposes of our preservation rule.
The sweeping rule of O'Rama should no longer bind us. Where defense counsel is aware of a jury note and does not know its contents, he should be required to preserve his claim. At minimum, we should permit trial courts to reconstruct the record to determine whether, in fact, defense counsel had notice of the contents of the note. I dissent.{**32 NY3d at 955}
[*4]I.
While working as a nurse's aide in 2006, defendant raped a 90-year-old Alzheimer's patient in her nursing home. The victim reported the rape to nursing home staff. A physical examination and rape kit revealed a laceration and the presence of semen in her vagina. DNA testing confirmed that defendant was the source of the semen. Defendant later confessed, providing graphic details of the sexual assault. He was arrested and proceeded to trial.
The court attempted to schedule the case for trial on three occasions. The first ended in a mistrial because of the unavailability of a witness who had suffered a heart attack. The second attempt was derailed by a blizzard. The third and latest attempt proceeded without incident and, at the end of the third day of trial, the court charged the jury.
The jury began deliberating and sent out two notes that afternoon. The first note requested "[the] definitions of the laws," defendant's "confessions," and "[the] DNA results." The second note stated: "We won't be able to reach a verdict on all 3 counts today—Can we come back at 9:00 AM tomorrow please." The court informed the parties of the contents of the notes, responded to the first note without objection, and instructed the jury to break until the next morning.
The jury resumed deliberations the next morning and, that day, the court addressed three more notes requesting legal instruction, testimony readbacks, and exhibits. The court read each note into the record before responding. Shortly before 5:00 p.m., the court received a sixth and seventh note from the jury. The sixth note stated: "We have made a decision on the Third Count we are having hard time with 1 and 2 just giving you are [sic] status." The seventh note—the note at issue in this case—stated: "We have arrived on decision on 2 and 3. [B]ut we have a lot of work to do on #1. . . . [D]on[']t see it being quick. Not sure what do to. We ars [sic] starting to make way." The record reflects that both of these notes were marked as court exhibits in the presence of counsel.
The court then brought the jury back into the courtroom and, with all parties present, stated: "I have received a note [jury note seven], which I have marked as Court Exhibit Number 9, and I will not read that into the record, but I'm sure you know what it says." The court then encouraged the jury to continue deliberating—stating, "we as a group would like you to keep working"—and asked the jurors to indicate {**32 NY3d at 956}whether they would like to continue for another hour that evening, or break for the day and resume deliberations in the morning. Defense counsel did not object. In response, the jury sent out a note asking to adjourn until the following morning.
The next day, the jury sent out four more notes containing requests for legal instruction. The court read each note into the record and provided responses without objection. That afternoon, the jury reached a unanimous verdict. Defendant was convicted of first-degree rape, first-degree sexual abuse, and second-degree endangering the welfare of a vulnerable elderly person. He was sentenced to 25 years' imprisonment.
Defendant appealed, asserting a Brady violation, a Rosario violation, and a Confrontation Clause violation. The Appellate Division affirmed the judgment (People v Morrison, 90 AD3d 1554 [4th Dept 2011]), and this Court denied defendant's application for leave to appeal (19 NY3d 1028 [2012]).
Eight years after the conclusion of his trial, defendant petitioned for a writ of error coram nobis, raising, for the first time, his jury note claim. The Appellate Division determined that "the issue may have merit" and vacated its prior order (People v Morrison, 128 AD3d 1424, 1425 [4th Dept 2015]).
Upon de novo consideration of the appeal, the Appellate Division, with one Justice dissenting, reversed the judgment, holding that the trial court's failure to advise counsel on the record of the contents of jury note seven was a mode of proceedings error warranting a new trial (see People v Morrison, 148 AD3d 1707 [4th Dept 2017]). Specifically, the majority determined that note seven "was a substantive jury note requiring notice to defense counsel," and that, by "failing to advise counsel on the record of the contents" of the note, the trial court "violated a core requirement of CPL 310.30" (id. at 1708).
One Justice dissented, concluding that the jury note at issue was "ministerial in nature"—not a substantive O'Rama error—and therefore defendant was "required to preserve his challenge to County Court's handling of that jury note" (id. at 1709 [Peradotto, J., dissenting]). The dissenting Justice granted the People's application for leave to appeal (29 NY3d 1039 [2017]).
[*5]
The victim is now deceased.
II.
As a general matter, "a court's failure to adhere to a statutorily or constitutionally grounded procedural protection{**32 NY3d at 957} does not relieve the defendant of the obligation to protest" (People v Kelly, 5 NY3d 116, 120 [2005] [citations omitted]; People v Silva, 24 NY3d 294, 299 [2014]). A strict application of the preservation rule "allows trial courts to correct errors in a timely fashion and prevent[s] unnecessary surprise after the conduct of a complete trial" (People v Mack, 27 NY3d 534, 540 [2016] [internal quotation marks and citations omitted]). "Were the rule otherwise, the State's fundamental interest in enforcing its criminal law could be frustrated by delay and waste of time and resources invited by a defendant" (People v Patterson, 39 NY2d 288, 295 [1976]), resulting in "an unmanageable morass of collateral proceedings within each prosecution" (People v Michael, 48 NY2d 1, 6 [1979]). We have therefore enforced the preservation requirement in a broad array of contexts, including in cases involving critical and fundamental rights (see e.g. People v Gray, 86 NY2d 10 [1995] [claim that the prosecution failed to prove each element of the crime charged]; People v Irizarry, 83 NY2d 557 [1994] [alleged failure, in a case involving dual juries, to seal first jury's verdict until second verdict was returned]; People v Buford, 69 NY2d 290 [1987] [excusal of sworn juror as "grossly unqualified"]), in cases implicating errors of constitutional dimension (People v Alvarez, 20 NY3d 75, 81 [2012] [alleged violation of defendant's "right to a public trial"]), and even in cases where the trial court's "handling of the proceedings" was "far from ideal" (People v Williams, 27 NY3d 212, 222, 224-225 [2016] [defendant's "promised sentence was illegal"]). It is "both proper and necessary," we have held, "for the State to require that all such objections be raised at a time when they can be dealt with most readily" (Michael, 48 NY2d at 6; Mack, 27 NY3d at 540).
Preservation is also "essential to the exercise of this Court's jurisdiction, which is limited to the review of questions of law" (Kelly, 5 NY3d at 119). Under CPL 470.05 (2), to present a "question of law" reviewable by this Court, the party claiming error must preserve their challenge "at the time of" the trial court's ruling or at a "subsequent time when the court had an opportunity of effectively changing the same" (CPL 470.05 [2]). Absent timely and proper preservation, this Court is without jurisdiction to review the claimed error (id.).[FN1] {**32 NY3d at 958}
[*6]A.
We have recognized an exception to the preservation rule only in a "very narrow" class of cases involving errors that "would affect the organization of the court or the mode of proceedings proscribed by law" (Patterson, 39 NY2d at 295). Historically, these so-called "mode of proceedings" cases involved errors going "to the essential validity of the proceedings" such that "the entire trial is irreparably tainted" (id. at 296). In Cancemi v People, for instance, the Court held that a defendant could not consent to being tried by a jury of less than 12 members (18 NY 128, 138 [1858]). Later, in People ex rel. Battista v Christian, the Court ruled that the defendant could not be convicted without being indicted, despite his consent, where the State Constitution required indictment by grand jury (249 NY 314, 319 [1928]). And in People v Coons, preservation was not required where the trial court failed to keep the jury sequestered during deliberations (75 NY2d 796, 797 [1990]).[FN2]
Mode of proceedings errors are immune from the rules governing preservation and waiver, as well as from harmless error analysis (see People v Mehmedi, 69 NY2d 759, 760 [1987]; People v Ahmed, 66 NY2d 307, 310 [1985]; Patterson, 39 NY2d at 295). Because of the significant ramifications associated with these types of errors—they require automatic reversal—we have generally resisted expansion of the mode-of-proceedings-error doctrine (see People v Cosmo, 205 NY 91, 104 [1912]; People v Sherlock, 166 NY 180, 183 [1901]; Pierson v People, 79 NY 424, 429-431 [1880]; People v Bradner, 107 NY 1, 4-5 [1887]).{**32 NY3d at 959}
B.
Nearly 30 years ago, in People v O'Rama, the Court first applied the mode of proceedings exception to an irregularity in the trial court's handling of a jury note (78 NY2d 270 [1991]). The Court's analysis began with CPL 310.30, which provides that, "[a]t any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case." Upon receipt of such a request, "the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction [*7]as the court deems proper" (id.). CPL 310.30 thus "imposes two separate duties" on the trial court following a substantive juror inquiry: the duty to notify counsel, and the duty to respond (O'Rama, 78 NY2d at 276). With regard to the statute's notice requirement, the Court stated that notice must be "meaningful"—that is, it must give "notice of the actual specific content" of the note (id. at 277).
Based on these requirements, the O'Rama Court set forth a procedure for addressing juror inquiries—a procedure designed not to mandate "adherence to a rigid set of procedures," but rather to "delineate a set of guidelines calculated to maximize participation by counsel at a time when counsel's input is most meaningful, i.e., before the court gives its formal response" (O'Rama, 78 NY2d at 278). According to the O'Rama Court, upon receiving a jury note, a trial court
"should mark the note as a court exhibit and read it into the record before the jury is called in (thereby ensuring adequate appellate review); afford counsel an opportunity to suggest responses to the note; inform counsel of the substance of the court's proposed response (thereby giving counsel an opportunity to suggest appropriate modifications before the jury is returned to the courtroom); and read the note aloud in open court before the jury so that any inaccuracies may be corrected by the individual jurors" (People v Walston, 23 NY3d 986, 989 [2014], citing O'Rama, 78 NY2d at 277-278).{**32 NY3d at 960}
That said, "modified procedures that are equally conducive to participation by defense counsel are permissible," and "the choice of methods to be used to address particular idiosyncratic situations is a matter to be entrusted to the sound discretion of the trial courts" (O'Rama, 78 NY2d at 278).
Ultimately, the Court in O'Rama determined that the trial court's actions—it "declined to read the note aloud"—constituted error, as "the court's . . . decision to withhold the contents of the juror's note fell outside the acceptable bounds of its discretion" (O'Rama, 78 NY2d at 275, 278-279). The Court's preservation discussion was limited to a single sentence: "[T]he [trial] court's error in failing to disclose the contents of the note had the effect of entirely preventing defense counsel from participating meaningfully in this critical stage of the trial," amounting to a mode of proceedings error exempt from the preservation rule (id. at 279). With that sentence, the floodgates opened.
The Court's application of the "meaningful notice" requirement has yielded particularly harsh results. "[A] trial court's failure to provide meaningful notice to counsel of a substantive jury note," we have stated, "constitutes a mode of proceedings error" exempt from the preservation rule (Mack, 27 NY3d at 539). Meaningful notice, even for preservation purposes, requires notice of "the actual specific content" of the jury's inquiry—meaning a "verbatim account" of the note (O'Rama, 78 NY2d at 277, 279; see also Silva, 24 NY3d at 299; People v Kisoon, 8 NY3d 129, 135 [2007]). A trial court therefore "does not satisfy its responsibility to provide counsel with meaningful notice . . . by summarizing the substance of the note" (People v Nealon, 26 NY3d 152, 156-157 [2015]). Notice "of the existence of the note," we have held, is inadequate where "the entire contents of the note" were not "shared with counsel" (Walston, 23 NY3d at 990). Countless convictions have been reversed on these grounds, despite the defendants' failure to preserve their claims (see e.g. Morrison, 148 AD3d at 1709 [reversing convictions for rape, sexual abuse, and endangering the welfare of a vulnerable elderly person on O'Rama grounds]; People v Thomas, 146 AD3d 991 [2d Dept 2017] [reversing convictions for murder, assault, and criminal possession of a weapon on O'Rama grounds]; People v Gough, 142 AD3d 673 [2d Dept 2016] [reversing convictions for criminal sexual act, burglary, attempted aggravated sexual abuse, assault, sexual abuse, and unlawful imprisonment on O'Rama grounds]; People v Caban, 78 AD3d 403 [1st Dept 2010] [reversing conviction for{**32 NY3d at 961} criminally negligent homicide on O'Rama grounds]; People v Martin, 26 AD3d 847 [4th Dept 2006] [reversing conviction for murder and criminal possession of a weapon on O'Rama grounds]; People v Roberts, 236 AD2d 848 [4th Dept 1997] [reversing convictions for criminal possession of a weapon, unlawful imprisonment, sexual abuse, and endangering the welfare of a child on O'Rama grounds]; see also Parker, 
32 NY3d at 52 [reversing defendant's conviction on O'Rama grounds]; People v Nonni, 
32 NY3d 49 [2018] [same]; People v Silva, 24 NY3d 294 [2014] [same]; People v Hanson, 24 NY3d 294 [2014] [same]; People v Walston, 23 NY3d 986 [2014] [same]; People v Tabb, 13 NY3d 852 [2009] [same]; People v Kisoon, 8 NY3d 129 [2007] [same]; People v Diaz, 150 AD3d 538 [1st Dept 2017] [same]; People v Morris, 147 AD3d 873 [2d Dept 2017] [same]; People v Robinson, 144 AD3d 40 [1st Dept 2016] [same]; People v Brown, 129 AD3d 854 [2d Dept 2015] [same]; People v Cotton, 127 AD3d 778 [2d Dept 2015] [same]; People v Garrow, 126 AD3d 1362 [4th Dept 2015] [same]; People v Roberites, 115 AD3d 1291 [4th Dept 2014] [same]; People v Giraldo, 116 AD3d 711 [2d Dept 2014] [same]; People v Thomas, 115 AD3d 995 [2d Dept 2014] [same]; People v McGhee, 103 AD3d 667[*8][2d Dept 2013] [same]; People v Stocks, 101 AD3d 1049 [2d Dept 2012] [same]; People v Lockley, 84 AD3d 836 [2d Dept 2011] [same]).[FN3] C.
Having opened Pandora's box, the Court later clarified that "not every violation" of the O'Rama procedure is "immune from normal preservation principles" (Silva, 24 NY3d at 299). Specifically, while meaningful notice and a meaningful response are both "core responsibilities" of the trial court under O'Rama, the Court determined that these two types of errors should not be treated the same: a trial court's failure to provide meaningful notice of a jury note will constitute a mode of proceedings error, while the court's failure to fulfill its second core responsibility—a meaningful response—will not (Mack, 27 NY3d at 539-544). "[L]ack of notice," the Court reasoned, "is {**32 NY3d at 962}the key determinant in classifying a particular procedure as a mode of proceedings error" (Mack, 27 NY3d at 541; see also Nealon, 26 NY3d at 160-161; Silva, 24 NY3d at 299-300). Broadening the mode of proceedings exception, we noted, "might open the door to abuse" and erode the "important purposes underlying the preservation rule" (Mack, 27 NY3d at 540, 544 [internal quotation marks and citation omitted]).
In People v Nealon, for instance, we concluded that "no mode of proceedings error occurred" even though the trial court failed to discuss the note with counsel before providing a response, because "defense counsel had notice of [the] jury note and failed to object" at a time when "the error could have been cured" (Nealon, 26 NY3d at 160-161 [internal quotation marks omitted]). We reached a similar conclusion in People v Mack, holding that the defendant was required to preserve his claim of error where "the trial court fail[ed] to provide a meaningful response to a substantive jury note but satisfie[d] its meaningful notice obligations" (Mack, 27 NY3d at 539). In both Nealon and Mack, we reversed the Appellate Division, which had previously been applying the mode of proceedings exception to both CPL 310.30's "meaningful notice" and "meaningful response" requirements (People v Mack, 117 AD3d 1450, 1451 [4th Dept 2014]; People v Nealon, 116 AD3d 886, 887 [2d Dept 2014]; see also People v McGuire, 101 AD3d 1386 [3d Dept 2012] [reversing convictions for course of sexual conduct against a child and sexual abuse]; People v Lockley, 84 AD3d 836 [2d Dept 2011] [reversing convictions for murder, burglary, attempted robbery, and criminal possession of a weapon]). Indeed, the dissenting Judges in those cases criticized the Court's inconsistent retreat from the basic tenets of O'Rama, reasoning that a trial court's failure to fulfill either "core responsibility" under CPL 310.30 should be exempt from the preservation rule (see Mack 27 NY3d at 545-547 [Rivera, J., dissenting]; Nealon, 26 NY3d at 164 [Lippman, Ch. J., dissenting]).
For nearly three decades, we have endured the ramifications of a doctrine built on a "cursory rationale" that "does not seem very persuasive" (see Walston, 23 NY3d at 991 [Smith, J., concurring]). I see no reason to retain it.
[*9]III.
Notice is, as a general matter, a critical prerequisite to lodging an objection: a defendant "generally cannot object to an error of which he or she is unaware" (Mack, 27 NY3d at 541; see {**32 NY3d at 963}also Nealon, 26 NY3d at 157). This simple and intuitive principle should, and generally does, guide our preservation rules. In this case, however, defense counsel was aware of the alleged error: he was informed not only that the court had received a jury note, but also that the court planned to deviate from the prescribed O'Rama procedure by not reading the note aloud. Defense counsel had "all the knowledge required to make an objection" (Nealon, 26 NY3d at 162), yet declined to do so—possibly for strategic reasons, or possibly because he had already read the note. In accordance with well-settled preservation principles, I would hold that defendant's claim is unpreserved. To the extent O'Rama and its progeny would prescribe a different result, those cases should be abrogated.
A.
For purposes of preservation, defense counsel's awareness of a jury note, by itself, sufficiently alerts counsel to object if he believes that the court has deviated from the O'Rama procedure by failing to provide adequate notice of the note's contents (see People v Kadarko, 14 NY3d 426, 428 [2010] [no mode of proceedings error where trial court "explained the note's contents to counsel" but "declined" to divulge a portion of the note showing the numerical breakdown of juror votes]; People v Ramirez, 60 AD3d 560, 561 [1st Dept 2009] [no mode of proceedings error where "the court read the note into the record almost verbatim" (emphasis added)], affd 15 NY3d 824, 825-826 [2010]; People v Neal, 268 AD2d 307, 307 [1st Dept 2000] [no mode of proceedings error even though part of the jury note "was not read into the record" where "counsel was aware of the . . . note's existence and was not deprived of an opportunity to read it"]). A simple objection—asking to see the note, or for the court to read it aloud—serves not only to preserve the defendant's claim for appellate review, it also brings the claimed error to the attention of the trial court at a time when the court has an opportunity to remedy the objectionable procedure and cure any asserted defect (see CPL 470.05 [2]; see also People v Ippolito, 20 NY3d 615, 625 [2013]). While a verbatim reading of the note might inform the defendant's desired response, it is not necessary for purposes of alerting the defense to interpose an objection if more information is desired. So long as the parties are not misled as to the note's contents (see Walston, 23 NY3d at 990), defense counsel is on notice of an O'Rama error, thereby enabling the defense to "adequately protect the defendant's rights" (O'Rama, 78 NY2d{**32 NY3d at 964}at 277). Notice of the O'Rama departure, by itself, "gives counsel the opportunity to object" (Mack, 27 NY3d at 541).
For these reasons, we have repeatedly "refused to classify an alleged error as a mode of proceedings error" where "the defendant has the notice and opportunity needed to object" (Mack, 27 NY3d at 542 n 3; People v King, 27 NY3d 147, 157 [2016] ["If defense counsel had an objection to the procedure employed by the trial court, he should have voiced it so that the court could have corrected any alleged error"]). We have also rejected the argument that a defendant's preservation obligation hinges on his subjective knowledge or awareness of the alleged error (see Williams, 27 NY3d at 223 n 2 [noting that, while the Court has "excused the failure to use the objection method of preservation" where the defendant had no "opportunity . . . to have discovered the error," the Court has never held "that the defendant's lack of actual knowledge that an error has occurred, despite an opportunity to learn of the error, may excuse the defendant from having to preserve his or her claim via objection"]). "[S]uch a theory," we have noted, "would swallow the preservation doctrine whole, thereby eviscerating an essential limit on our jurisdiction," since "virtually every defendant could rely on a record silent on the subject of the defendant's actual knowledge to argue that he or she did not in fact comprehend the erroneous nature of the court's actions and therefore had no obligation to object" (id., citing People v Turriago, 90 NY2d 77, 80 [1997], and People v Kelly, 5 NY3d 116, 119 [2005]). We have therefore rejected a "sweeping knowledge-based exception to the preservation rule" (id.), and have enforced the preservation rule even in cases where the court's error "escaped discovery of all those involved and trained in the law—the judge, prosecutor and defense counsel" (id. at 231 [Rivera, J., dissenting]).
Because it is grounded in fairness and common sense, a true notice-based rule is readily administrable: Where defense counsel is not aware of the existence of a jury note, he does not have sufficient knowledge to object, and preservation would not be required (see Silva, 24 NY3d 294). Similarly, where a trial court inaccurately paraphrases a jury note or omits key language—without informing the parties that it is doing so—defense counsel is again unaware of any O'Rama deficiency, and preservation would not be required (see Walston, 23 NY3d 986). But where [*10]defense counsel is aware of the existence of the note and aware that he does not have notice of its contents,{**32 NY3d at 965} counsel "has all the knowledge required to make an objection" and should be expected to do so (Nealon, 26 NY3d at 162).
Our decision in People v Kadarko (14 NY3d 426 [2010]) is illustrative. There, the trial court received a jury note indicating that the jurors were "still divided" on a few of the charges and providing a numerical breakdown of the jury's vote splits (id. at 428). In lieu of reading the note verbatim into the record, the trial judge explicitly "declined" to divulge the vote splits to counsel before responding, "[b]elieving it inappropriate for him to show counsel the numerical breakdown of the votes" (id.). Instead, the court "explained" the contents of the note, stating that it "gave divisions among the jurors as to each robbery" (id.).
Although the defense did not have verbatim notice of the contents of the note, the Court in Kadarko nonetheless held that the trial court's error did not "amount to a failure to provide counsel with meaningful notice of the contents of the jury note" (Kadarko, 14 NY3d at 429). The Court reasoned that the trial judge had informed counsel of the existence of the note, and "that he was specifically withholding the numbers from counsel until after the jury had retired to resume deliberations" (id.). Accordingly, while the trial court's decision not to provide a verbatim reading prior to responding to the note "may have been error, it was not a mode of proceedings error" (id. at 429-430). And since "[d]efense counsel voiced no objection to this procedure," it was unpreserved for the Court's review (id. at 429).
Similarly, here, the trial court informed the parties that it had received a note, it marked the note as a court exhibit in the presence of counsel, and it explicitly advised the parties of its intended procedure, stating that the court did not intend to read the note into the record; as in Kadarko, the court informed the parties that it was "specifically withholding" the verbatim contents of the note (Kadarko, 14 NY3d at 429). Like the defense in Kadarko, defense counsel here was aware, at the very least, (1) of the existence of the note, and (2) that the court did not intend to provide a verbatim reading into the record before responding. And again, in People v Parker (32 NY3d 
49 [2018] [decided today]), defense counsel knew, at minimum, (1) of the existence of the notes at issue, (2) that the notes contained requests for testimony, and (3) that the court had not read the verbatim contents of the notes into the record, or responded to them, when the jury reached its verdict. This information,{**32 NY3d at 966} by itself, alerted defense counsel to an O'Rama deficiency sufficient "to enable [them] to object to the trial court's procedure if [they] considered that approach to be prejudicial" (Mack, 27 NY3d at 543). Defense counsel declined to do so.
B.
To be clear, I fully endorse the majority's view that a trial court's failure to provide meaningful notice of the contents of a jury note amounts to error. CPL 310.30's notice requirement "is not a mere formality or a procedural device designed only to ensure counsel's presence in the courtroom" (O'Rama, 78 NY2d at 276). Rather, just as the statute's "requirement that juror inquiries be answered mandates a 'meaningful' response, so too does that statute's 'notice' requirement mandate notice that is meaningful" (id. at 277 [citation omitted]). The "precise language and tone of [a] juror note may be critical to counsel's analysis of the situation in the jury room and ability to frame intelligent suggestions for the fairest and least prejudicial response" (O'Rama, 78 NY2d at 277). Similarly, "the Trial Judge's summary of the 'substance' of an inquiry cannot serve as a fair substitute for defense counsel's own perusal of the communication," as defense counsel "is best equipped and most motivated to evaluate the inquiry and the proper response[ ] in light of the defendant's interests" (id.). For these reasons, we have appropriately held that meaningful notice under CPL 310.30 requires a "verbatim account" of the note (id. at 277, 279; Silva, 24 NY3d at 299; Kisoon, 8 NY3d at 135). And in the present case, the trial court's procedure—declining to show meaningful notice on the record—fell short. But that error, like other errors, should require preservation.
CPL 310.30 governs procedure, not preservation. Though the statute imposes two "core requirements" on the trial court—notice to the parties, and a response to the jury—its text contains no exception to the preservation rule. It makes no reference to the "mode of proceedings" doctrine. And it certainly does not purport to expand this Court's jurisdiction where a claimed error is raised. Yet the O'Rama mode of proceedings scheme inexplicably conflates CPL 310.30's "meaningful notice" requirement with our preservation doctrine, requiring "verbatim notice" of the contents of a jury note before preservation requirements may be triggered. It concomitantly expands the Court's jurisdiction beyond legislatively-circumscribed bounds.
[*11]
The majority's hyperstringent rule also perversely discourages preservation: It would be "unwise for counsel to object {**32 NY3d at 967}and seek correction of the error" where the trial court fails to read a jury note into the record (Nealon, 26 NY3d at 162) since, "if the error remains uncorrected," defense counsel "has a near guarantee that any conviction will be reversed" (Walston, 23 NY3d at 992 [Smith, J., concurring] ["When a trial judge makes the mistake of paraphrasing or summarizing a jury note, only a foolish defense lawyer will ask the judge to correct the error"]; Mack, 27 NY3d at 543-544 ["If the verdict is an acquittal, counsel will have secured the desired trial outcome. If the jury convicts the defendant, counsel will have created an appellate issue requiring automatic reversal and a new trial simply by remaining silent"]). In this way, the majority's holding incentivizes gamesmanship, rewarding a defendant's strategic choice not to take reasonable measures to learn the contents of a jury note or to otherwise challenge the trial court's procedure.[FN4] It also enables litigants to distort a mere record deficiency into a mode of proceedings error—a designation reserved for the most fundamental flaws, and exempt from all traditional rules governing preservation, waiver, and harmless error (Mack, 27 NY3d at 540-541). And it further "diminish[es] the important purposes underlying the preservation rule" (id. at 544).[FN5]
{**32 NY3d at 968}In this case, for instance, defendant failed to object to the trial court's handling of jury note seven. He also failed to raise his jury note claim in his first appeal to the Appellate Division. And apparently, he failed to raise it in his first application for leave to appeal to this Court. Defendant first raised his jury note claim in a coram nobis application eight years after his trial. Similarly, in People v Parker (32 NY3d 
49 [2018] [decided today]), the defendants' claimed mode of proceedings error was never raised below. Instead, the defendants consistently challenged the trial court's suppression ruling, advancing that argument before the trial court, before the Appellate Division, and in their initial filings submitted to this Court. It was not until their appeals to this Court were already underway, more than five years after the defendants were convicted, that the defendants (and their new appellate counsel) asserted, for the first time, that the trial court failed to provide meaningful notice of the contents of two jury notes. These belated claims and extensive delays are precisely the types of problems that the preservation rule is designed to combat.
C.
Of course, stare decisis generally counsels against overruling our prior decisions. That doctrine "promotes predictability in the law, engenders reliance on our decisions, encourages judicial restraint and reassures the public that our decisions arise from a continuum of legal principle rather than the personal caprice of the members of this Court" (People v Peque, 22 NY3d 168, 194 [2013]). But stare decisis "also recognizes that the lessons of time may lead to a different result" (People v Taylor, 9 NY3d 129, 149 [2007]), and in certain rare cases like this one, a reversal of course is warranted where "an extraordinary combination of factors undermines the reasoning and practical viability of our prior decision" (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d 1, 23 [2016]). And to the{**32 NY3d at 969} extent a defendant might "withhold an objection in reliance on O'Rama, in the hope of obtaining an undeserved reversal," that surely is not the "kind of reliance" on our precedents "that should . . . be encouraged" (Walston, 23 NY3d at 992 [Smith, J., concurring]).
Preservation is "the rule rather than the exception" (Williams, 27 NY3d at 219). The O'Rama mode of proceedings exception to the preservation rule has grown needlessly broad, proving "more harmful" than beneficial and leading to "reversals based on errors that could easily have been cured if counsel had complained" (Walston, 23 NY3d at 992 [Smith, J., concurring]). Under a practical, commonsense approach to notice, defendant had both the requisite reason and opportunity to object to the trial court's O'Rama departure. I would not excuse his failure to do so.
[*12]IV.
At minimum, remittal for a reconstruction hearing is warranted to determine whether defense counsel was, in fact, aware of the specific contents of the jury note. Reconstruction of the record is appropriate where, for instance, "it is clear that a proceeding took place that was not transcribed," where "the minutes have been lost," or where "there is significant ambiguity in the record" (People v Velasquez, 1 NY3d 44, 49 [2003] [citations omitted]; see also People v Parris, 4 NY3d 41, 44 [2004]; People v Harrison, 85 NY2d 794, 796 [1995]). We have also employed reconstruction to determine whether a claimed error falls within the mode of proceedings exception—in other words, to determine whether or not the Court has jurisdiction to consider the asserted error (see People v Walker, 18 NY3d 839 [2011]; People v Monclavo, 87 NY2d 1029 [1996]; People v Michalek, 82 NY2d 906 [1994]; People v Odiat, 82 NY2d 872 [1993]). In People v Monclavo, for example, it was not clear whether a mode of proceedings error had occurred because the record was inconclusive regarding defendant's presence during a material stage of the proceeding (87 NY2d at 1031). Rather than automatically vacating the defendant's conviction, the Court remitted to Supreme Court for a reconstruction hearing "to determine whether or not defendant was present"—or, in other words, whether a mode of proceedings error had in fact occurred (id.). On remittal, if it was "determined that defendant was present, the judgment of conviction [would] be amended to reflect that result" (id., citing 
Michalek, 82 NY2d{**32 NY3d at 970}at 907). This case presents a similarly straightforward subject for reconstruction: whether defense counsel saw the jury note.
A.
In the jury note context, Appellate Division courts routinely remit for reconstruction hearings when faced with a record ambiguity regarding O'Rama compliance (see People v Mitchell, 129 AD3d 404 [1st Dept 2015]; see also People v Meyers, 148 AD3d 1057 [2d Dept 2017]; People v Williams, 113 AD3d 1116 [4th Dept 2014]; People v Kahley, 105 AD3d 1322 [4th Dept 2013]; People v Russo, 283 AD2d 910 [4th Dept 2001]; People v Martinez, 186 AD2d 14 [1st Dept 1992]). In People v Mitchell, for instance, the Appellate Division observed that "[t]he jury note in question appeared in the court file but the transcript contain[ed] no reference to it" (129 AD3d at 404). The Court determined that, before it could "consider [the] defendant's claim that Supreme Court's failure to address the note . . . constituted a mode of proceeding[s] error . . . , the record should be reconstructed as completely as possible to determine the facts surrounding the submission of the note and how the note was handled by the court" (id.).
This Court has also, at least implicitly, condoned the use of reconstruction hearings in this context. In People v Cruz, we noted that reconstruction hearings have been employed in O'Rama cases "to determine whether there was a jury note and, if so, what action was taken with regard to the jury note" (14 NY3d 814, 815-816 [2010] [internal quotation marks and citation omitted]). There, the Appellate Division remitted to Supreme Court for a reconstruction hearing and, on appeal, this Court examined the reconstructed record (see id. at 818 [Lippman, Ch. J., concurring] [referring to the reconstruction hearing below as a "very useful exercise"]). The Court ultimately found "[n]othing" to suggest "that the [trial] judge received the jury note or discussed its contents with the parties," and therefore reversed the defendant's conviction and ordered a new trial (id. at 815-816).
B.
Contrary to the Court's contention (People v Parker, 32 NY3d 49, 61 [2018] [decided today]), reconstruction is not foreclosed by our decision in People v Walston (23 NY3d 986 [2014]). In Walston, we held that a mode of proceedings error occurred where there was "no indication" in the record "that the entire {**32 NY3d at 971}contents of the note were shared with counsel" (id. at 990). There, rather than reading the jury note into the record or making it available to the parties, the court merely "paraphrased the note for counsel" and, in doing so, "omitted any reference" to certain relevant language in the note (id.). Similarly, in People v Silva, the Court determined that a mode of proceedings error had occurred where "nothing in the record" indicated that "the court informed the parties about the jury's inquiry" before accepting the jury's verdict (24 NY3d at 297). Neither of those cases contained a blanket rejection of reconstruction as an available remedy in all O'Rama cases. Indeed, the Appellate Division courts continued remitting for reconstruction hearings in jury note cases even after Silva and Walston were decided (e.g. Mitchell, 129 AD3d 404; Meyers, 148 AD3d 1057).
Nor is there any indication that ordering reconstruction hearings in this context would somehow "imperil" the "necessity that courts fulfill their core responsibility of providing counsel with notice of the precise contents of a jury [*13]note" (Parker, 
32 NY3d at 62). More likely, ordering reconstruction hearings would motivate trial courts to comply with O'Rama in the first instance so as to avoid the substantial burdens associated with an additional hearing—a hearing where, among other things, the trial judge might be required to provide testimony concerning his or her recollection of how jury notes were handled. Nor do I agree that trial courts would begin neglecting their record-making obligations based on our pronouncement that a corrective measure—a reconstruction hearing—should be available.
C.
Today, the Court closes the door on reconstruction in the O'Rama context, even in cases where, unlike in Walston and Silva, the record affirmatively provides a strong "indication that the entire contents of the note were shared" with the defense (Walston, 23 NY3d at 990). In People v Parker (32 NY3d 
49 [2018] [decided today]), the record was far from "devoid of information as to how [the] jury notes were handled" (Silva, 24 NY3d at 300); to the contrary, the record strongly suggests that the trial court routinely displayed each jury note to the parties, and that defense counsel had, in fact, reviewed the notes at issue (see Parker, 
32 NY3d at 66-67 [DiFiore, Ch. J., dissenting]). For instance, jury note one was never read into the record, nor was there any indication of when or how it was made available{**32 NY3d at 972} to the parties. But note one was marked as a court exhibit, and the defense attorneys acknowledged on the record that they "ha[d] seen it"—apparently during an untranscribed proceeding. With respect to jury note two, the note was also marked as a court exhibit, and the parties were presumably made aware of the note's contents in an off-the-record proceeding, as they had already discussed and "agreed upon" a proposed response before the court read the note into the record.
There is no reason to believe that the trial court deviated from this practice with respect to jury notes three and four—the two notes at issue. Rather, the record indicates that the court again made those notes available to the parties in an off-the-record proceeding: According to the trial transcript, the court stated that it had received "three additional notes"—jury notes two, three, and four—and that the notes were each marked as court exhibits. After reading and responding to note two, the court stated that it would provide the "additional testimony" that the jury "requested in the other two notes" (notes three and four) after lunch.[FN6] The court's on-the-record reference to the contents of notes three and four, and to the court's intended response, strongly supports the conclusion that the parties were made aware of the notes' contents and had discussed an appropriate response with the court in an off-the-record proceeding (see Parker, 
32 NY3d at 66 [DiFiore, Ch. J., dissenting]).
In the instant case, the record similarly supports an inference that defense counsel received meaningful notice of the contents of jury note seven during an unrecorded proceeding before the court responded to the jury's inquiry. As the record demonstrates, the trial court's practice when receiving jury notes was to formulate a response "together with the attorneys" in a collaborative process that, apparently, was generally unrecorded. For example, the court responded to a note requesting a readback of testimony without having identified the relevant portion of the requested testimony on the record, indicating that the note and the court's intended response were previously discussed with the parties off the record. The same is true of the jury's note requesting DNA results and defendant's confessions; the court indicated that those materials "were sent into the jury room," but the record contains no prior discussion identifying the relevant materials. Indeed, after the court{**32 NY3d at 973} responded to jury note three, defense counsel explicitly referenced a prior off-the-record bench conference that was not transcribed.
With regard to jury note seven—the note at issue—the court marked the note as a court exhibit in the parties' presence. In responding to the note, the court repeatedly used the pronoun "we," indicating to the jury that the court and the parties had collectively formulated a response "as a group" during yet another proceeding that was not transcribed. And despite the court's explicit reference to the note, defense counsel tellingly declined to object or otherwise indicate that he had not yet seen it. Under these circumstances, where the record "indicate[s] compliance with adequate procedures under O'Rama" (Silva, 24 NY3d at 300), and the proceedings can readily be reconstructed,[FN7] remittal for a hearing would likely resolve the record's ambiguity and clarify this Court's jurisdiction—or lack thereof—to consider defendant's claim.
Rather than remitting for reconstruction, the majority presumes that a mode 
of proceedings error occurred because of the absence of affirmative "record 
proof" that the entire contents of the note were shared with counsel (majority 
op at 952 Parker, 32 NY3d at 52). But just as we "cannot assume that the proper procedure was utilized when the record is devoid of information as to how jury notes were handled" (Silva, 24 NY3d at 300 [internal quotation marks omitted]; Parker, 
32 NY3d at 60), we also should not assume that meaningful notice was lacking, particularly when the record indicates otherwise (see Walker, 18 NY3d at 840; Monclavo, 87 NY2d at 1031; Michalek, 82 NY2d at 907; Odiat, 82 NY2d at 874; see also Ramirez, 60 AD3d at 561 ["The record warrants an inference that the court discussed the note with counsel during a luncheon recess in the absence of the court reporter"], affd 15 NY3d 824, 825-826{**32 NY3d at 974} [2010]). The majority retains jurisdiction under the guise of a speculative mode of proceedings error, even though the record does not conclusively establish that the error occurred, and in fact suggests that it did not. That result is fundamentally at odds with our preservation doctrine—an essential limit on this Court's jurisdiction.
Employing reconstruction would also deter litigants from strategically claiming error on appeal based solely on a deficiency in the record rather than any real failure of meaningful notice. The majority's blanket ban on reconstruction effectively mandates reversal where there is any ambiguity as to "meaningful notice," even if the record indicates that no such error occurred. That rule, in essence, elevates the "technical defect of failing to make an adequate record" over the trial court's meaningful notice obligation (Parker, 
32 NY3d at 66 [DiFiore, Ch. J., dissenting]). And ironically, it "finds error in what may only be the court's failure to record the absence of error" (id. 
at 66 n 2).
This Court, and apparently the lower courts, are now powerless to order reconstruction of the record in order to determine whether a mode of proceedings error actually occurred. Instead, the People will now have to determine whether to bring defendant to trial for a fourth time—this time, with 12-year-old evidence.
V.
Where the defense has notice of an outstanding jury note, counsel should be required to object in order to preserve defendant's claim for appellate review. Under that rule, where the defense has not seen the note, and counsel therefore voices an objection, the parties will be given an opportunity to review the note's contents. Conversely, where, as here, the record contains a reference to the note and defense counsel declines to object, we can safely assume the most obvious conclusion: that the parties, in fact, saw the note. In this way, a true notice-based rule will more effectively accomplish the result that the majority seeks: meaningful notice of the jury note.
The mode of proceedings doctrine, as defined by the majority, disregards our Court's limited jurisdiction, encourages gamesmanship, and, most importantly, leads to unjust results. Once again, the majority prefers to wait for a legislative fix for a problem of the Court's own making (see n 2, supra). Until then, the hard lessons continue.
[*14]
{**32 NY3d at 975}Judges Rivera, Stein, Fahey and Wilson concur. Chief Judge DiFiore dissents in an opinion, in which Judges Garcia and Feinman concur in a separate dissenting opinion by Judge Garcia.
Order affirmed, in a memorandum.

Footnotes

Footnote *:The Appellate Division concluded that the jury note marked as court exhibit 8 was ministerial and that issue is not before us on this appeal by the People. Accordingly, we express no opinion on whether the Appellate Division properly concluded that court exhibit 8 was ministerial.

Footnote 1:The Appellate Division has jurisdiction to review unpreserved errors in the interests of justice (see CPL 470.15). This Court does not.

Footnote 2:Notably, a number of the Court's mode of proceedings designations have been overruled by statute or constitutional amendment (see People v Gajadhar, 9 NY3d 438, 446 [2007] [recognizing that Cancemi is no longer good law in light of 1938 constitutional amendments]; People v Trueluck, 88 NY2d 546, 548-549 [1996] [noting that a 1973 constitutional amendment undermined the Court's holding in Battista]; CPL 310.10 [2] [overruling Coons by abolishing mandatory sequestration]). The legislature has also abrogated this Court's per se reversal policy in other contexts (see CPL 240.75 [noting that Rosario violations "shall not constitute grounds for any court to . . . set aside a conviction, or reverse, modify or vacate a judgment of conviction in the absence of a showing by the defendant that there is a reasonable possibility that the non-disclosure materially contributed to the result of the trial or other proceeding"]; see also People v Jones, 70 NY2d 547, 556-557 [1987, Bellacosa, J., concurring] [noting that the Court's earlier "per se error rule" in the Rosario context served to "elevate() the consequences of . . . nonconstitutional Rosario violations to a level higher than a host of constitutional errors to which harmless error analysis applies"]).

Footnote 3:These reversals result not from any "widespread failure" of our trial courts (Parker, 
32 NY3d at 61-62 n 7), but rather from the Court's indiscriminate expansion of the "mode of proceedings" designation—a blunt tool that carries drastic and harsh consequences. Given the relatively "small number" of criminal trials, and the "relatively rare" occurrence of appellate reversals (Parker, 
32 NY3d at 61-62 n 7), this sampling of cases suggests that O'Rama errors cause a disproportionately large number of criminal reversals.

Footnote 4:I do not mean to suggest that this tactic is routinely employed by defense attorneys. To the contrary, the absence of an objection (from either the defense attorney or the prosecutor) more likely indicates the absence of error. But the incentive created by O'Rama—rewarding silence over preservation—underscores its illogical and unjust results.

Footnote 5:Appellate courts in other jurisdictions generally do not mandate automatic reversal of a conviction based on a trial court's failure to provide on-the-record verbatim notice of a jury note (see e.g. United States v Fernandez-Hernandez, 652 F3d 56, 64 [1st Cir 2011] [defendants forfeited their jury note claim even though "counsel did not learn of the notes until (after) the jury . . . reached a verdict" because, at that time, "the Defendants did not object"]; United States v Adeniji, 31 F3d 58, 65 [2d Cir 1994] [harmless error applies to trial court's mishandling of a jury note and therefore noncompliance "does not mandate reversal unless prejudice is shown"]; State v Apodaca, 303 Conn 378, 397-398, 33 A3d 224, 237 [2012] [defendant's jury note claim was unpreserved and did not otherwise constitute reversible error]; People v McLaurin, 235 Ill 2d 478, 485-489, 922 NE2d 344, 349-351 [2009] [defendant "has forfeited appellate review" of his jury note claim because he did not "object to the error at trial"]; Johnson v United States, 840 A2d 1277, 1280-1281 [DC 2004] [defendant "failed to challenge" the "manner in which the trial court handled a note it received from the jury"]; Commonwealth v Bacigalupo, 49 Mass App Ct 629, 634, 731 NE2d 559, 565 [2000] [trial court's failure to provide meaningful notice does not require reversal where the prosecution "makes an affirmative showing that the error was harmless beyond a reasonable doubt"]; Hallmon v United States, 722 A2d 26, 28 [DC 1998] ["a violation of Rule 43, specifically with respect to communications to and from the jury, is subject to harmless error review"]; People v Price, 1 Cal 4th 324, 414, 821 P2d 610, 660 [1991] ["the defense waived the trial court's apparent error in failing to notify counsel" before responding to the jury's request because counsel was subsequently "made aware" of the jury's request and "did not object to the court's failure to provide earlier notice"]; People v France, 436 Mich 138, 163, 461 NW2d 621, 631 [1990] [improper jury communication does not mandate reversal where there is "a firm and definite showing of an absence of prejudice"]; People v Ainsworth, 45 Cal 3d 984, 1020, 755 P2d 1017, 1039 [1988] [a violation of the prescribed jury note procedure "does not warrant reversal of a conviction . . . unless prejudice is shown"]).

Footnote 6:Jury notes three and four requested only a readback of testimony—nothing else.

Footnote 7:In connection with defendant's coram nobis motion, the trial prosecutor submitted an affirmation, stating that "the court handed" the note at issue "to defense counsel" and to the prosecution, and that counsel "had sufficient opportunity to give meaningful input" before the court responded. The trial judge also submitted an affirmation indicating that "it has always been, and continues to be, [his] practice to disclose all jury notes to trial counsel," and he was "not aware of any case or instance where [he] did not follow this practice." Notably, defendant's appellate counsel—who was not his trial counsel—has never claimed that defendant's trial counsel did not see the note at issue; on appeal, defendant claims only that the trial record does not affirmatively demonstrate O'Rama compliance. While these affirmations cannot be considered for their truth in this appeal, they demonstrate that the record could be readily reconstructed, even at this late stage.