OPINION OF THE COURT
Wilson, J.
Defendant Jamar Bethune challenges Supreme Court’s granting of the People’s motion to resettle his trial transcript without holding the reconstruction hearing that Mr. Bethune requested. Although better practices could have been observed, Supreme Court did not, on the facts of this case, abuse its discretion by correcting the record without the benefit of a reconstruction hearing. Accordingly, the Appellate Division order upholding the judgment of Supreme Court should be affirmed.
I.
The trial judge is the “final arbiter of the record” certified to the appellate courts (People v Alomar, 93 NY2d 239, 247 [1999]; see Judiciary Law § 7-a). Parties to an appeal are entitled to have that record show the facts as they really happened at trial, and should not be prejudiced by an error or omission of the stenographer (People v Buccufurri, 154 App Div 827, 828 [1913]). Judges confronted with allegations of error in that record — especially allegations of their own error — may hold a reconstruction hearing with the parties, any witnesses or evidence the court deems helpful (cf. CPLR 5525 [c] [1]). Here, the court instead relied on the stenographer’s official certification of accuracy of the amended transcript, the affidavit of counsel recounting a conversation with that reporter as to the reason for the discrepancy in the two transcripts, and the context of the purported error. On this particular factual record Supreme *542 Court did not act outside its discretion to resettle the transcript without a hearing.
As we have said, “[n]ot every dispute about the record mandates a reconstruction hearing” (People v Santorelli, 95 NY2d 412, 424 [2000]). In certain circumstances, Supreme Court can deny a party’s request for such a hearing when it concludes the exercise is not necessary to elucidate what originally took place. Under the facts in Santorelli, those circumstances were the “papers and record submitted, together with the court’s clear recollection” of the proceedings (id.). Although the facts of that case led us to emphasize the confident recollection of its trial judge, nothing in Santorelli required a reconstruction hearing absent that arbiter’s perfect recall. Even when a judge’s recollection of the disputed or missing portion of a transcript is unclear, other information may suffice to allow him or her to resettle the record without a reconstruction hearing.
II.
Here, although Supreme Court did not indicate that it had a clear recollection of the trial,[1] it had sufficient information before it to resettle the transcript without the benefit of a hearing.
Mr. Bethune, an 18-year old who shot a 13-year old in front of the child’s family and others, was convicted after a jury trial of murder in the second degree and criminal possession of a weapon in the second degree. He contends on appeal that Supreme Court denied him a fair trial by providing a supplemental jury instruction that, according to the trial transcript as originally certified by the court reporter, described intentional murder as an unintentional crime and thereby relieved the People of the burden of establishing a crucial element of the charge.
On learning of Mr. Bethune’s contention, the People, believing the apparent defect in the instruction to be the result of a typographical error, drew the court reporter’s attention to the contested words in that instruction and asked the reporter to consult her notes. Although the court reporter provided neither an affidavit nor her notes to the court or counsel, the Assistant *543 District Attorney submitted an affirmation that the reporter advised the People that her notes showed that the two relevant instances of the word “unintentional,” as well as the three others to which her attention had been drawn, should instead have been transcribed as “intentional.”[2] The reporter prepared a corrected certified transcript in which those five instances reflected her stenographic notes. Presented with that affirmation and certified corrected transcript, Supreme Court ruled, over Mr. Bethune’s objection, that the record would be resettled in accordance with the corrected transcript without a reconstruction hearing.
Several factors support the Appellate Division’s conclusion that Supreme Court acted within its discretion to resettle the transcript on the basis of the information before it. The trial judge could rely not only on the reporter’s certification of the corrected transcript, but also on undisputed portions of that transcript, including: the accurate balance of the charge;[3] the fact that two of the five alleged misstatements were attributed to defense counsel, not the court; and, most significantly, the repeated failure of any party to object to what would have been prominent misstatements of the law. Furthermore, as there was no suggestion during oral argument on the motion that any person present at the trial five years earlier could recollect what words were spoken, it is not clear what evidence beyond the reporter’s original stenographic notes might have been obtained through a hearing.
Although it would have been preferable for the court to have received an affidavit from the court reporter, rather than an affidavit of counsel recounting a conversation with that reporter, we cannot say that Supreme Court acted outside its discretion to resettle the transcript without a hearing.
Mr. Bethune’s remaining argument has been rendered academic by our decision.
*544 Accordingly, the order of the Appellate Division should be affirmed.

. Cf. Santorelli, 95 NY2d at 423-424 (describing details of the court’s “very definite recollection” of the missing sidebar conference [emphasis omitted]).

. Three of the transcription errors misrepresented the words of the trial judge: first during a colloquy with the attorneys, and twice during the supplemental jury instruction. The subsequent two errors misrepresented words defense counsel spoke outside the presence of the jury.

. After the alleged misstatement, Supreme Court instructed the jury that “a person is guilty of Murder in the Second Degree when with the intent to cause the death of another person he causes the death of such person. The term intent used in this definition . . . means conscious objective or purpose.”