People v Sanders (2022 NY Slip Op 01102)





People v Sanders


2022 NY Slip Op 01102


Decided on February 17, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 17, 2022

Before: Manzanet-Daniels, J.P., Gische, Mazzarelli, Friedman, Mendez, JJ. 


Ind No. 773/14 Appeal No. 15336-15336A-15336B Case No. 2018-2715 

[*1]The People of the State of New York, Respondent,
v
Joel Sanders, Defendant-Appellant.


DLA Piper US LLP, New York (Jessica Masella of counsel), and DLA Piper US LLP, Miami, FL (Christopher G. Oprison of the Bar of the State of Florida, State of Texas, State of Virginia and District of Columbia, admitted pro hac vice, of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (David M. Cohn of counsel), for respondent.



Judgment, Supreme Court, New York County (Robert M. Stolz, J.), rendered October 10, 2017, convicting defendant, after a jury trial, of scheme to defraud in the first degree, conspiracy in the fifth degree and securities fraud in violation of the Martin Act (General Business Law § 352-c[5]), and sentencing him to a conditional discharge with community service and a fine of $1 million; and orders of the same court and Justice, entered on or about March 16, 2018, which denied defendant's CPL 440.10 motion to set aside the judgment, and entered on or about November 15, 2018, which denied his further motions to vacate the judgment and to renew his pretrial dismissal motion, unanimously affirmed.
The verdict was based on legally sufficient evidence and was not against the weight of the evidence (People v Danielson, 9 NY3d 342, 348-349 [2007]). Moreover, we find that the evidence was overwhelming. There is no basis for disturbing the jury's credibility determinations. Among other things, the trial testimony was corroborated by numerous emails, some of which were highly incriminating, such as one in which defendant joked about the conspiracy's success in deceiving "clueless" auditors. The evidence established that defendant, who was then the chief financial officer of Dewey & LeBoeuf, took part in a scheme to defraud banks and investor insurance companies to keep the firm afloat, and that he conspired at the very least with the firm's finance director to do so. The evidence also sufficiently established that defendant violated the Martin Act by defrauding the insurance companies and making numerous misrepresentations in the course of a $150 million private placement involving the sale of securities to those companies.
We find unavailing defendant's argument that evidence was received at his retrial in violation of principles of collateral estoppel or double jeopardy, as well as his related arguments. At defendant's first trial, the jury acquitted him of 14 counts of falsifying business records in the first degree and failed to reach a verdict on any other counts. After the trial, the court dismissed all 15 counts of grand larceny in the first degree on the ground of legally insufficient evidence.
With regard to the dismissed grand larceny counts, upon which the jury had deadlocked, the court's dismissal amounted to an acquittal for double jeopardy purposes (Smalis v Pennsylvania, 476 US 140, 142 [1986]; People v Biggs, 1 NY3d 225, 229 [2003]). However, neither double jeopardy nor collateral estoppel precluded the introduction at the retrial of evidence underlying the dismissed counts, namely the theft of funds in the course of the private placement involving insurance companies and related conduct in obtaining a $100 million line of credit from banks, as evidence of defendant's guilt of the remaining counts (see Ashe v Swenson, 397 US 436 [1970]; People v Acevedo, 69 NY2d 478, 484-85 [1987]). The court dismissed those counts because it found insufficient [*2]evidence of larcenous intent. In finding that there was no evidence that defendant intended to permanently deprive the entities of the funds loaned or invested, the court did not necessarily have to make a finding in defendant's favor that he did not by that same conduct intentionally defraud the entities to obtain those funds in the first place (with the hope, albeit unrealized, of later repaying those funds). Thus, in the circumstances of the case, a finding of no larcenous intent was not equivalent to a finding of no fraudulent intent. Accordingly, the evidence was properly admitted to prove all three counts at the second trial (see id.; People v Rossi, 222 AD2d 717, 717-18 [2d Dept 1995], lv denied 88 NY2d 884 [1996]).
With regard to the acquitted falsifying business records counts underlying an accounting fraud involving defendant's credit card, and the reversal of certain disbursement writeoffs, the basis for the jury's acquittal is not clear. "If [a defendant] can show no more than that the verdict is ambiguous, [the defendant] cannot establish that the jury found the evidentiary fact in [the defendant's] favor" (People v Goodman, 69 NY2d 32, 40 [1986]). The jury could rationally have concluded that defendant, a chief financial officer and senior executive, did not make or directly cause the false entries, but entrusted the finance director to execute and oversee the fraudulent adjustments, and that any causation by defendant, in developing the fraudulent scheme with the finance director and including those fraudulent adjustments among many in a "master plan," was too attenuated to convict defendant of causing the specific false entries (see id.). For these reasons, the same evidence was properly admitted to prove the conspiracy count. The acquitted counts relating to false invoices do not implicate collateral estoppel because the record does not establish that any such evidence was actually received at the retrial.
The court providently exercised its discretion in admitting the fact of Dewey & LeBoeuf's bankruptcy in 2012 because it was intertwined with the narrative of the charged crimes, and it tended to prove the People's theory that defendant had a motive to commit fraud to attempt to reverse the firm's dire financial situation (see People v Vails, 43 NY2d 364, 368 [1997]). To the extent the People may have impermissibly insinuated that defendant caused the bankruptcy, the court instructed the jury in its opening and final charge that defendant was not charged with causing the bankruptcy, and that the jury should not speculate about its circumstances. Admission of defendant's salary was properly admitted because it was probative of defendant's desire to keep his firm afloat, and any potential for prejudice was minimal.
The court should have excluded an inflammatory email in which defendant said, "I don't want to cook the books anymore. We need to stop doing that." As the court had found at the first trial, the email refers to unrelated [*3]conduct not alleged in the indictment, and in light of the numerous emails relevant to the charged conduct written by defendant to prove his knowledge and participation in the fraudulent scheme, the potential for unfair prejudice exceeded any minimal probative value this email had. Nevertheless, any error in admitting this evidence was harmless (People v Crimmins, 36 NY2d 230, 241B242 [1975]).
"Defendant's ineffective assistance of counsel claims are unreviewable on direct appeal because they involve matters outside the record concerning counsel's reasons for declining to make a severance motion" (People v Castro, 166 AD3d 448, 450 [1st Dept 2018], lv denied 33 NY3d 946 [2019]). Accordingly, because defendant has not raised this issue in a CPL 440.10 motion, the merits may not be addressed on appeal. To the extent defendant made postconviction motions on other grounds, including a claimed applicability of a civil statute of limitations to the Martin Act count, those motions were properly denied.
We have considered defendant's remaining contentions and find no basis for reversal.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 17, 2022