People v Salas (2025 NY Slip Op 03603)

People v Salas

2025 NY Slip Op 03603

Decided on June 12, 2025

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 12, 2025

No. 58 

[*1]The People & c., Respondent,
v
Christopher Salas, Appellant.

Benjamin S. Brindis, for appellant.
Gamaliel Marrero, for respondent.

SINGAS, J.

A jury convicted defendant of second-degree murder. On appeal, defendant presses two claims. First, he argues that a missing transcript of jury deliberation proceedings constitutes a mode of proceedings error under People v O'Rama (78 NY2d 270 [1991]), entitling him to vacatur of his conviction. Second, appealing the denial of his motion to vacate his conviction under CPL 440.10, he argues that his trial counsel was ineffective. We reject defendant's mode of proceedings claim, but hold that Supreme Court erred by summarily denying the CPL 440.10 motion without an evidentiary hearing. We therefore remit to Supreme Court for such a hearing to be held.
I.
Defendant was charged with the fatal stabbing of a 20-year-old that occurred in August 2007, when defendant was 16 years old. Shortly after his indictment, the People served notice of police-arranged "[s]ingle [p]hoto [i]dentification[s]" made the day after the crime.[FN1] Defendant moved to suppress these identifications, arguing that they were conducted "in a suggestive manner" and had "taint[ed] any further identification" by the identifying witnesses. Supreme Court ordered a Rodriguez/Wade hearing to determine whether to preclude the witnesses from identifying defendant as the perpetrator at trial (see generally People v Rodriguez, 79 NY2d 445 [1992]; United States v Wade, 388 US 218 [1967]).
Approximately one year after Supreme Court ordered the hearings, defendant's trial counsel took over defendant's representation from his original attorney. Years later, at the final pretrial appearance, the court asked the parties, "Are there hearings in this case?" Despite that the previously ordered Rodriguezi>/Wade hearing had not been held, both parties said that there were no pending hearings, and the court scheduled the case for trial. No Rodriguez/Wade hearing was held. A couple of weeks later, trial ensued, and during a pause in jury selection, the People said they were "definitive[ly]" not going to call the relevant identifying eyewitness to testify at trial. Unlike this eyewitness, the other eyewitnesses on the People's witness list were friends of the victim and did not contemporaneously identify defendant as the perpetrator.
During opening statements, defense counsel argued to the jury that the eyewitnesses' identifications of defendant were unreliable—defendant's core theory of the case. On this point, defense counsel stated that "[t]here [we]re no independent witnesses linking [defendant] to the commission of this crime"; that the eyewitnesses "did not know [defendant] prior to th[e] day" of the murder; that "[t]he only" testifying eyewitnesses "[we]re friends of the deceased"; and that "[t]here were no photographs shown to any witnesses." The People asserted that the latter comment was false, misled the jury, and opened the door to the introduction of rebuttal evidence. In response, defense counsel explained that the comment referred to the anticipated trial witnesses, who were not subjected to any pre-trial identification procedures, and not to all the witnesses to the alleged crime. Alternatively, counsel argued that the People should be allowed to elicit in rebuttal only whether police "showed a photograph of [defendant]," and that witnesses should not be allowed to testify that they had previously identified defendant. The court ruled that the People could ask a witness whether they identified defendant to police, but precluded them from "mentioning any photos."
The People later called the eyewitness who, as mentioned, the prosecutor had stated "definitive[ly]" would not be testifying. The prosecutor explained that after having no contact with the witness, the People had succeeded in contacting him. Defense counsel objected only to having limited time to investigate the witness's prior crimes for use on cross-examination. Counsel did not object to the witness being called or move for a mistrial on this basis, nor did he request a Rodriguezi>/Wade hearing.
The witness recounted the stabbing and testified about his interactions with defendant before and on the day of the crime. From the stand, he identified defendant as the perpetrator. In accordance with Supreme Court's ruling, he told the jury that he identified defendant to police the day after the stabbing, but did not testify that he did so by photo. On cross-examination, defense counsel sought to impeach the witness by stressing that police had released him from custody only after he identified defendant. In doing so, counsel asked questions that revealed to the jury that the witness identified defendant by photo. Defense counsel also asked the witness a line of questions seemingly based on the incorrect premise that the witness's only statement to police was a written one that did not identify defendant. At sidebar, the People explained that the witness had in fact made two statements: the initial written one, and the subsequent photo identification. In response, defense counsel insisted that he had never seen the photo identification and stated that he would not have pursued this line of questioning "[i]f [he] had gotten th[at] document before."
Two other eyewitnesses testified for the People and identified defendant as the perpetrator. Both testified that they had close relationships with the victim, were with the victim immediately before and during the stabbing, and clearly saw defendant commit the crime.
After summations and charge, deliberations began. The record contains three jury notes. The first note, signed by the jury foreperson and dated May 25, 2011, at 1:45 p.m., asked for materials relating to witness testimony. A section of this note labeled "COURT USE ONLY" is filled in with information about the case. The second note, at issue here, is signed and dated May 25, 2011, at 3:20 p.m., and requested exhibits and testimony. This note's "COURT USE ONLY" section is blank. The third note, signed and dated May 26, 2011, at 10:49 a.m., stated that the jury had reached a verdict. Its "COURT USE ONLY" section is partially filled in.
Defendant was convicted and directly appealed the judgment. But his direct appeal was long delayed by missing transcripts, including one that, by defendant's own description, would reflect how jury note two was handled. Eventually, a court reporter averred that the missing stenographic notes "c[ould not] be located" despite "[a]n extensive and diligent search," and that the court reporters' office was "unable to provide" the transcript at issue. The relevant transcript is clearly missing: the trial record from the afternoon of May 25, 2011 ends with the court responding to jury note one and sending the jury to resume deliberations, and the trial record from May 26, 2011 starts in the afternoon, with the jury already deliberating, when the court received jury note three.
Nine-and-a-half years after defendant's conviction—and nearly two years after the court reporter averred that the transcript at issue was lost—defendant first moved for a reconstruction hearing, describing the missing transcript as "key" because it "reflects the [c]ourt's and counsels' handling of [j]ury [n]ote [two]." Defendant further stated that he "has never been able to obtain the transcript regarding the handling of th[is] . . . jury note," and argued that "a reconstruction hearing is needed to determine how the [c]ourt handled [j]ury [n]ote [two] and whether that gave rise to any appealable issues."
Defendant simultaneously moved to vacate his conviction under CPL 440.10, arguing that his trial counsel was constitutionally ineffective (see CPL 440.10 [1] [h]). In support, he submitted an affirmation from trial counsel dated more than nine years after the trial. Counsel recounted his recollection of the case, without having reviewed his "office file." He did not recall "the reasons for many of the decisions made during the trial." But he "acknowledge[d]" that a Rodriguezi>/Wade hearing was ordered and never held, and he "c[ould] think of no reason why [he] would waive that, or any hearing."
Supreme Court issued an order summarily denying the CPL 440.10 motion, without holding an evidentiary hearing, and denying without prejudice defendant's motion for a reconstruction hearing. First, the court determined that "counsel's failure to conduct a [Rodriguez/Wade hearing,] while troublesome," did not rise to ineffective assistance. The court further stated that counsel's comment to the jury that no photographs were shown to any witnesses "open[ed] the door to the People introducing rebuttal evidence"; but Supreme Court concluded that defense counsel "effectively argued to cure his error," and that the trial court "protected . . . defendant from any undue prejudice." Second, regarding reconstruction, the court agreed with defendant that "the transcript record of the colloquy between the parties and the court as it pertains to jury note [two] is irretrievably lost." But the court held that defendant had failed adequately to show that he diligently and promptly pursued the transcript's reconstruction (see generally People v Parris, 4 NY3d 41 [2004]). The court therefore denied defendant's reconstruction request "with leave to renew." An Appellate Division Justice granted defendant leave to appeal Supreme Court's order and consolidated that appeal with defendant's direct appeal (see 2022 NY Slip Op 63834[U] [1st Dept 2022, Gesmer, J.]).
Before the Appellate Division, defendant again argued that his trial counsel was ineffective. He further argued that the missing transcript entitles him to reversal of his conviction. Alternatively, as he did before Supreme Court, defendant asserted that "th[e] Court must remand for reconstruction," once again acknowledging that "the record in this case is incomplete" because "trial court records regarding the handling of [j]ury [n]ote [two] have been lost."[FN2]
The Appellate Division modified the judgment by reducing defendant's sentence in the interest of justice, and affirmed the order summarily denying defendant's CPL 440.10 motion (see 220 AD3d 545 [1st Dept 2023]). As relevant here, the Court rejected defendant's claim that the missing transcript establishes a mode of proceedings error under O'Rama, and rejected defendant's ineffective assistance claim (see id.).[FN3] A Judge of this Court granted defendant leave to appeal (see 41 NY3d 1004 [2024]).
[*2]II.
Defendant asserts that the missing transcript entitles him to vacatur of his conviction. Despite having argued below that "[a] reconstruction hearing is . . . required," he now reasons that the present record shows a mode of proceedings O'Rama error because it does not affirmatively demonstrate that the trial court properly responded to jury note two. We disagree and hold that where a transcript of on-the-record proceedings material to a defendant's O'Rama claim is missing, the proper remedy is a reconstruction hearing, provided that the defendant's conduct "evidence[s] a good faith purpose to obtain prompt and effective reconstruction" (see Parris, 4 NY3d at 49).

Under CPL 310.30, upon receiving a request from the jury, the court must summon the jury "and, after notice to both the [P]eople and counsel for the defendant," must respond to the request in the defendant's presence. Where the jury's request is "substantive," these requirements are "best served by following" the O'Rama procedure: the request should be in writing; it should be marked as an exhibit and "read into the record in the presence of counsel"; "counsel should be afforded a full opportunity to suggest appropriate responses"; the court "should ordinarily apprise counsel of the substance of the responsive instruction it intends to give"; and only then should the court summon the jury and reread the note "in open court" before responding to it (O'Rama, 78 NY2d at 277-278; see also id. at 278 [noting that "where there exist unique articulable circumstances that make the foregoing steps impractical, modified procedures that are equally conducive to participation by defense counsel are permissible"]).
Given the importance of affording defendants meaningful notice of jury inquiries, we have held that a trial court's failure to provide such notice is a mode of proceedings error for which the defendant is entitled to automatic vacatur (see generally e.g. People v Mack, 27 NY3d 534 [2016]). We have also repeatedly held that the requisite notice must be provided on the record (see generally People v Morrison, 32 NY3d 951 [2018]; People v Parker, 32 NY3d 49 [2018]). Accordingly, reversal is required where the record suggests that the trial court followed a procedure off the record that otherwise would have complied with O'Rama (see Parker, 32 NY3d at 60-61 & n 4). In that circumstance, because the reversible error is the court's failure to comply with O'Rama on the record, reconstruction of what happened off the record would be futile, and therefore a reconstruction hearing is unwarranted (see Morrison, 32 NY3d at 952; Parker, 32 NY3d at 61-62).
Defendant argues that reconstruction is likewise unavailable in the distinct scenario present here. We reject that contention. Notwithstanding defendant's attempt to force this case into the O'Rama rubric, the fact of the missing transcript renders inapposite the precedent involving off-the-record proceedings on which defendant relies. Unlike in those cases, here, the trial court may have fully complied with O'Rama on the record; we simply do not know one way or the other, because we do not know what transpired at on-the-record proceedings that occurred and are relevant, but that nonetheless are not transcribed.
Reconstruction hearings exist for this very purpose—to determine what happened in court where "the minutes [of a proceeding] have been lost" (People v Velasquez, 1 NY3d 44, 49 [2003]). The reconstruction remedy reflects "[a] presumption of regularity" that "attaches to judicial proceedings" and "may be overcome only by substantial evidence" (id. at 48). In light of this presumption of regularity, we do not assume from a missing transcript alone that the court must have committed reversible error. On the contrary, "a loss of reporter's minutes is rarely sufficient reason in itself for reversing a conviction" (Parris, 4 NY3d at 44; see People v Harrison, 85 NY2d 794, 796 [1995] ["the absence of a stenographic record does not, per se, require reversal of defendant's conviction"]). This reflects the commonsense principle that "if the record can be accurately reconstructed[,] no prejudice results from its loss" (Harrison, 85 NY2d at 796).
Defendant asks us to flip this presumption of regularity in the O'Rama context, and to assume from the missing transcript that the trial court committed a mode of proceedings error during on-the-record proceedings. We decline to apply this presumption of irregularity. Such a presumption would entitle defendants to vacatur of their convictions whenever a transcript of jury deliberation proceedings is lost, even where reconstruction could negate any prejudice and demonstrate that no error occurred. That anomalous and unjust result is neither compelled by our precedent nor warranted in service of O'Rama's animating goal to ensure that courts give defendants meaningful, on-the-record notice of jury inquiries. We instead apply our longstanding precedent holding that a missing transcript alone does not entitle a defendant to the extreme remedy of vacatur, but may entitle a defendant to a reconstruction hearing (see Parris, 4 NY3d at 48-49). To be sure, if a defendant shows that they are entitled to a reconstruction hearing, and that the missing transcript at issue "cannot be reconstructed . . . , there must be a reversal" (Harrison, 85 NY2d at 796). But defendant has not made that showing. Thus, the missing transcript does not warrant reversing defendant's conviction.
[*3]III.
Defendant also challenges Supreme Court's summary denial of his CPL 440.10 motion claiming that defense counsel was ineffective. On the facts of this case, we hold that Supreme Court abused its discretion by denying the motion without conducting an evidentiary hearing.
Under New York's ineffective-assistance standard, "[t]he core of the inquiry is whether [the] defendant received 'meaningful representation' " (People v Benevento, 91 NY2d 708, 712 [1998]). This standard assesses counsel's "representation as a whole" (People v Blake, 24 NY3d 78, 81 [2014]), in light of "the evidence, the law, and the circumstances of [the] particular case, viewed in totality and as of the time of the representation" (People v Baldi, 54 NY2d 137, 147 [1981]). "The defendant bears the burden of showing both that counsel's performance was constitutionally deficient, and the absence of strategic or other legitimate explanations for counsel's challenged actions" (People v Watkins, 42 NY3d 635, 639 [2024] [internal quotation marks, citation, and brackets omitted]). Under New York law, a "showing of prejudice [i]s a significant but not indispensable element" (People v Stultz, 2 NY3d 277, 284 [2004]). Meanwhile, under the federal ineffective assistance standard, the defendant must show that counsel's performance fell below the standard of "reasonableness under prevailing professional norms," and must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (Strickland v Washington, 466 US 668, 688, 694 [1984]).
Where a defendant moves to vacate their conviction under CPL 440.10, the court "must" decide "whether the motion is determinable without a hearing to resolve questions of fact" (CPL 440.30 [1] [a]). The court "may deny" the motion summarily under enumerated circumstances, including where purported facts essential to the motion are unsupported by "sworn allegations" that "substantiat[e] or tend[ ] to substantiate" those facts (id. § 440.30 [4] [b]), or where such a fact "is contradicted by a court record or other official document" and "there is no reasonable possibility that [the] allegation is true" (id. § 440.30 [4] [d]). We review a CPL article 440 motion's summary denial for abuse of discretion (see e.g. People v Fredericks, — NY3d &mdash, &mdash, 2025 NY Slip Op 01011, *4 [2025]).
Defendant's ineffective assistance claim cannot be decided without first resolving questions of fact. Defense counsel's affirmation, together with the trial record, suggest that counsel may have lacked a strategic or other legitimate basis for one or more of his actions relating to eyewitness identification testimony at the heart of the People's proof. Whether counsel in fact had such a basis for his conduct turns on factual information outside the present record that should be developed at an evidentiary hearing. We therefore remit to Supreme Court for a hearing on the motion (see People v Zeh, 22 NY3d 1144, 1145-1146 [2014]).
Accordingly, the order of the Appellate Division should be modified by remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
Order modified by remitting to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed. Opinion by Judge Singas.Chief Judge Wilson and Judges Rivera, Garcia, Cannataro, Troutman and Halligan concur.
Decided June 12, 2025

Footnotes

Footnote 1: The People's notice referenced three such identifications. Only one is at issue here. 

Footnote 2: Contradicting his representations to the courts below, defendant asserted before this Court that "we don't know if there [a]re missing transcripts," and that the trial transcript may in fact be complete. We cannot countenance this shift in defendant's position respecting the facts of this case. Parties may freely make alternative legal arguments; but they cannot make mutually inconsistent representations of fact for strategic purposes as litigation proceeds. We hold defendant to his repeated acknowledgement, which the record amply supports, that a "key portion" of the trial transcript is "missing" or "lost."

Footnote 3: In a portion of the Appellate Division's order that defendant chose not to appeal, the Appellate Division affirmed Supreme Court's denial, without prejudice, of defendant's motion for a reconstruction hearing (see 220 AD3d at 545).