People v Vilella (2026 NY Slip Op 00097)

People v Vilella

2026 NY Slip Op 00097

Decided on January 13, 2026

Appellate Division, First Department

MENDEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 13, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Barbara R. Kapnick Manuel Mendez Bahaati E. Pitt-Burke Marsha D. Michael

Index No. 3987/13|Appeal No. 4543|Case No. 2017-2055|

[*1]The People of the State of New York, Respondent,
vBrandon Vilella, Appellant.

Defendant appeals from a judgment of the Supreme Court, New York County (Gregory Carro J.), rendered April 18, 2016, convicting him of attempted murder in the first and second degrees and assault in the first degree, and imposing sentencing, and an order, same Court, entered on or about November 29, 2023, which denied defendant's CPL 440.10 motion to resettle the trial transcript, or, in the alternative, to vacate the judgment of conviction.

Edelstein & Grossman, New York (Jonathan I. Edelstein of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Jared Wolkowitz and Alexander Michaels of counsel), for respondent.

MENDEZ, J. 

Defendant appeals from a judgment, convicting him, after a jury trial, of attempted murder in the first and second degrees and assault in the first degree. The charges arose from evidence that defendant, together with his codefendant, attempted to kill and seriously injured the victim in retribution for the victim's testimony in a criminal matter.
On appeal, defendant argues that his conviction must be reversed, and a new trial ordered, because the court failed to comply with the meaningful notice requirements of CPL 310.30, and made a mode of proceedings error when it failed to inform counsel of the actual specific contents of, and failed to read verbatim into the record, two jury notes, and failed to provide counsel an opportunity to provide meaningful input on the court's response to the second jury note. Defendant further argues that the court committed six reversible errors when it (1) admitted a 911 call as an excited utterance, (2) allowed a witness to testify about gang signals, (3) allowed the same witness to testify about gang-coded language, (4) allowed a witness to provide testimony identifying defendant's voice in recorded phone calls, (5) failed to grant defendant's mistrial motion, and (6) admitted an incriminating statement made by the codefendant. Finally, defendant argues that the court erred in summarily denying his CPL 440.10 motion without a hearing.
The record reflects that the trial court complied with its core responsibilities under CPL 310.30 by providing counsel with notice of the actual, specific contents of both jury notes. When handling the first note, the court read it almost verbatim to counsel and defendant outside the presence of the jury, discussed the note with counsel, and afforded counsel meaningful input into the court's response. When the jury re-entered the courtroom, the court again, in the presence of counsel and defendants, read the contents of the note into the record almost verbatim. Similarly, the court read the second note into the record almost verbatim to counsel and defendant outside the presence of the jury and again after the jury returned.
The record also reflects that the court's discussions with counsel when addressing the first note impacted the manner in which it handled the second note, which resulted from its instruction to the jury to send in another note if they wanted a readback. The court's discussions with counsel when addressing the first jury note made counsel aware of the court's intended response. Finally, the court's omission of the words "hear" and "again" did not deprive counsel of meaningful notice of the contents of the second jury note, because omitting those words did not change the note's meaning or content, which was the jury's request for a recharge on the law.
The record further reflects that the courts evidentiary rulings were proper, and that any evidentiary errors were either not preserved or harmless, given the overwhelming evidence of defendant's guilt. To the extent that the errors were not preserved, we decline to review them in the interest of justice. Finally, the court providently exercised its discretion in denying defendant's CPL 440 motion.
Accordingly, we affirm Supreme Court.Relevant Facts
Defendant was arrested on January 7, 2016. The events preceding his arrest were as follows: On January 6, 2013, at about 4:15 p.m. at the intersection of 121st Street and Manhattan Avenue, the codefendant approached the victim, who was standing in front of a corner deli, and, as captured by the deli's video surveillance system, swung a machete at the victim's neck and jaw. The victim suffered a fractured jaw and later developed a scar. His treating doctor testified that if the blow had landed an inch or two lower the victim would have died of blood loss.
The victim ran from the scene to his sister's apartment, which was about one block away. The sister called 911 from the apartment and, while screaming almost incomprehensibly, told the 911 operator that the victim was "wheezing," that he had "blood coming out of his mouth," that his "face was split open," and that she "could see inside the victim's mouth." She further told the operator that the attack occurred approximately five minutes before the call and that "she knew who did it" - namely, a "person in a gray van." She also said that she was asking the victim questions to which he was nodding yes or shaking his head no, and that "Mookie" was "the person who sent the person to do it." She said that Mookie and a friend carried out the attack and she described both Mookie and the friend.
At the time of defendant's arrest on January 7, 2013, he told police that his nickname was "Mookie." During his post-arrest interrogation, the codefendant, nicknamed "Charlie Rock," identified defendant in a photo as "Mook." Defendant and his codefendant were charged under a 2013 indictment with attempted murder - first and second degree - and assault in the first degree, for attempting to kill and seriously injuring the victim.
At a joint trial, the people introduced overwhelming evidence of defendant's guilt, including, as relevant to this appeal, the surveillance video of the attack; photographs of defendant and codefendant together depicting distinctive hand signs, including one captioned: "My [n] Mook home@ Forever_Rock," referring to the codefendant 's social media handle; the 911 tape; the testimony of a captain in the Department of Corrections Intelligence Bureau who was qualified as an expert in "interpreting coded slang and gang affiliation," and who interpreted code words used in recorded conversations by defendant and others such as "boss," "peeped," "lamping," "MJ," "type," "rat," "caught," "hit me," "wrap," and "waving," and the hand signs shown in photographs of defendant and codefendant .
The People also introduced the testimony of an analyst in the Manhattan District Attorney's office who listened to two weeks of telephone calls involving defendant, the codefendant, and others. In many of these calls, defendant incriminated himself, bragged about the attack, and provided a motive. The analyst testified that voices associated with the nicknames "Mookie" and "Mo" were consistent from call to call and matched the voice from calls defendant made from Rikers using his book and case number.
The People also introduced cell-site records that showed defendant and codefendant made 25 calls in the vicinity of 507 Manhattan Avenue, a cell tower near the attack location, from 3:47 p.m. to 4:15 p.m. on the day of the attack. Finally, the People introduced a statement made by the codefendant to the mother of his child implicating himself in the attempted murder.
Defendant presented no witnesses.
During deliberations the jury submitted two notes to the court, which were marked as court exhibits IV and V. The first note, submitted at 10:02 a.m., requested: "(1) written definitions of each of the 3 charges; (2) Copies of the phone transcripts; (3) Video of crime; (4) Photo from [W]ebster [H]all; (5) Charts showing cell phone calls made."
The court addressed the note in the presence of counsel and informed them of its proposed response, including a readback of the charges in response to the first item on the note, by stating:
THE COURT: The jury has sent out a note requesting a few things. The first thing they request is written definitions of each of the three charges, and informally I asked the attorneys. They're not consenting. They want copies of the phone transcripts that were used as an aid. Again, the parties will not consent, right?
DEFENDANT'S COUNSEL: Correct.
CODEFENDANT'S COUNSEL: Yes.
THE COURT: Video of the crime. They have, photos from Webster Hall. They have a chart showing cell phone calls. I propose to tell them number one, the transcripts are not in evidence. They were just an aid, and I will leave it at that, and the charts - if they're talking about the chart used in summations, that is not in evidence, and that is it. Bring in the jury. One other thing, can I tell them reread the charge if they want now and just ask the foreperson[?]
DEFENDANT'S COUNSEL: Sure. Sure.
CODEFENDANT'S COUNSEL: What is that?
THE COURT: Can I ask the foreperson if they want the charge read I can't give the written charge. If they want me to read them, I can do it right now. I can read the charges.
CODEFENDANT'S COUNSEL:I have a problem with that.
THE COURT: Okay, but I am going to tell them they can have it read back. I won't say now. I will wait for another note if that is what you want.
CODEFENDANT'S COUNSEL:I rather have you say no, and if they want you to read it back, then let them come back with another note.
THE COURT:When I charged them, I told them they can have recharges and anything they wanted so I will let them know."
After this colloquy, the jury entered the courtroom and in the presence of counsel, defendant and the jury the court addressed the jury's request as previously discussed with counsel after reading the substantive contents of the note almost verbatim.
THE COURT: All right. Good morning, everyone. We are in receipt of your note in which you made a few requests. Your first request which is a written definition of each of the three charges. Unfortunately, the law does not allow me to give you them in writing. So, if you have any questions regarding the law I certainly can recharge you on the law if that is what you would like.
A copy of the phone transcripts. Those phone transcripts were an aid to you while you were listen[ing] to the phone calls. They're not in evidence so as I said when I instructed you things that are not received in evidence are not available. So you can't have those transcripts
You've already gotten the video of the crime. You got the photos from Webster Hall. Now, charts showing cell phone calls.
You recall that the D.A. used a demonstrative chart in his summation. That is not in evidence so you can't have that chart if that's the chart you're talk[ing] about. If not, if there is some other chart or something, just try to be more specific about actually what you mean by charts.
So, with that, I would ask you to continue your deliberations. If you have anymore requests, just put them in writing and send them out. Thank you. . ."
The jury then exited the courtroom and continued deliberations. Sometime thereafter the court received a second jury note requesting, "that we hear the charges read again." The record resumes with a statement from the court:
THE COURT: Case on trial, the parties are present the defendants are present. The jurors aren't out. I know they want to read the charges.
The jury entered the courtroom and in the presence of counsel, defendants and the jury the court read the substantive contents of the note into the record almost verbatim.
THE COURT: All right, ladies and gentlemen, we are in receipt of your last request which asks for a recharge on the charges, so we'll do that now.
Defendant's attorney had previously consented to the court's re-reading of the charges to the jury when they discussed the court's proposed response to the first jury note. During that discussion the court and counsel agreed that the court would inform the jury to send in another note if they wanted a recharge on the law. The second note did not request anything other than a re-reading of the charges. There was no objection by any of the attorneys to the way the court proceeded. The court proceeded to re-read the charges to the jury.
The dissenting justices agree there was no mode of proceedings error in the manner the court handled the first jury note but would find there was a mode of proceedings error in the manner the court handled the second jury note and would reverse defendant's conviction.Legal Analysis
CPL 310.30 provides that upon a jury's request for further instruction or information with respect to the law, the content or substance of trial evidence, or for any other matter pertinent to the jury's consideration of the case, the court must give notice to the People and counsel for the defendant, direct that the jury be returned to the courtroom, and in the presence of the defendant, give the requested information or instruction on the matter as the court deems proper.
In People v O'Rama (78 NY2d 270 [1991]), the Court of Appeals in addressing the "notice" requirement contained in CPL 310.30, held that "notice" means "meaningful" notice to counsel of the "actual specific content of the jurors' request" (id. at 277). The court further held that, "in most cases, the requirement of meaningful notice is best served by following the procedure outlined in United States v Ronder (639 F2d 931, 934)" (id.). The O'Rama Court cautioned, however, that neither the Ronder decision nor its decision "mandate[s] adherence to a rigid set of procedures, but rather. . . delineate[s] a set of guidelines, or outlines a suggested procedure, calculated to maximize participation by counsel at a time when counsel's input is most meaningful" (id. at 278; People v Silva, 24 NY3d 294, 299 [2014]; People v Walston, 23 NY3d 986, 989 [2014]). O'Rama suggested that upon receipt of a written jury request, the note should be marked as a jury exhibit before the jury is recalled into the courtroom and read into the record in the presence of counsel. After the contents are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses. Finally, the court should read the communication in open court in the presence of counsel, the defendant and the jury (78 NY2d at 278). However, failure to strictly follow this suggested procedure does not always result in a violation of the notice requirements of CPL 310.30 or rise to the level of a mode of proceedings error, as the designation of a mode of proceedings error is "reserved for the most fundamental flaws. The error must go to the essential validity of the process and be so fundamental that the entire trial is irreparably tainted" (People v Mack, 27 NY3d 534, 540-541 [2016][internal quotations and citations omitted]).
Thus, a mode of proceedings error will typically be found when the trial court either withholds a jury note altogether (see O'Rama, 78 NY2d at 279; People v Silva, 24 NY3d 294, 299-300 [2014]), substantially alters or paraphrases the jury note by omitting key terms when advising counsel of the request (Walston, 23 NY3d at 990; People v Kisoon, 8 NY3d 129, 135 [2007]; People v Dennis, 192 AD3d 1137, 1138-1139 [2d Dept 2021], lv denied 37 NY3d 964 [2021]), or when there is no indication on the record that the court informed defense counsel of the contents of the jury note, or read the jury note in open court (see People v Parker, 32 NY3d 49, 59 [2018]; see also Silva, 24 NY3d at 298).
Other departures are subject to the rules of preservation, for example, there is no mode of proceedings error when a trial court reads a jury note into the record almost verbatim, if the record reflects that counsel was provided notice of the note's "actual content" (see People v Ramirez, 60 AD3d 560, 561 [1st Dept 2009], affd 15 NY3d 824 [2010] [court discussed the note with counsel during a luncheon recess and read the note into the record almost verbatim]; People v Matthews, 228 AD3d 521 [1st Dept 2024, lv denied 42 NY3d 1021 [2024][no mode of proceedings error where the court read the note almost verbatim into the record and any inconsistencies between the note and the transcript were minor and did not alter the meaning of the note]; People v Carter, 201 AD3d 551 [1st Dept 2022], lv denied 42 NY3d 949 [2022][court did not summarize or paraphrase the note, but instead read it almost verbatim, and to the extent there were any inconsistencies they were minor and did not alter the meaning of the note]; People v Jackson, 192 AD3d 486, 486-487 [1st Dept 2021], lv denied 37 NY3d 957 [2021] [paraphrasing part of the note did not undermine counsel's ability to provide input]; People v Ramos, 164 AD3d 1154, 1155 [1st Dept 2018], lv denied 33 NY3d 1107 [2019][court read the jury note into the record almost verbatim]; People v Almonte, 81 AD3d 564, 565 [1st Dept 2011], lv denied 16 NY3d 892 [2011][court read the note to counsel almost verbatim except for insignificant changes]; People v Donoso, 78 AD3d 129, 135 [1st Dept 2010], lv denied 15 NY3d 952 [2010][trial court's departure from O'Rama by failing to read the note verbatim did not deprive defendant of anything substantive]).
Similarly "where the trial court has read the precise contents of the [jury] note into the record in the presence of counsel, defendant, and the jury, . . . the court's failure to discuss the note with counsel before recalling the jury is not a mode of proceedings error" (People v Wiggs, 28 NY3d 987, 988 [2016], quoting People v Nealon,26 NY3d 152, 160-162 [2015]; see People v Morris, 27 NY3d 1096, 1097-1098 [2016] [no mode of proceedings error where the trial court read the precise content of a jury note into the record for the first time in the presence of counsel, defendant, and the jury]; Nealon, 26 NY3d at 158 [court failed to discuss the note and the court's intended response with counsel before recalling the jury, but read the note into the record in the presence of counsel and the jury before providing a response to the note]). This is the case especially when counsel knows of the court's intended response (People v Mack, 27 NY3d 534, 543 [2016][counsel should have objected to the court's acceptance of the verdict before responding to the note, since counsel knew the precise content of a jury note and how the court planned to respond]; People v Williams, 21 NY3d 932, 934-935; People v Starling, 85 NY2d 509, 516 [1995] [no mode of proceedings error where counsel was aware of the substance of the court's intended response due to previous discussions, and received notice of the contents of the jury note, even though notice was given in the presence of the jury]; see also People v Rodriguez, 184 AD3d 420, 421 [1st Dept 2020], lv denied 35 NY3d 1115 [2020][record established that counsel received notice of the content of the note and of the court's intended response]).
The key distinguishing factor from O'Rama in the cases previously cited, as in this case, is that counsel received notice of the contents of the jury notes. Evidently, strict adherence to the "best practice" procedure suggested in O'Rama is not required so long as the fundamental purpose of CPL 310.30 is achieved, which is providing counsel with meaningful notice of the contents of a jury note so that counsel has an opportunity to provide meaningful input to the court's response.
Here, the meaningful notice requirement was satisfied because counsel was informed of the substantive contents of the jury notes and was aware of the court's intended response. Therefore, to the extent that defendant argues that the court made a mode of proceedings error when it failed to give counsel an opportunity to suggest responses to the second note before the jury was recalled, this claim is without merit.
When the court received the first note, it proposed to recharge the jury in response to its request for a written definition of the charges. However, counsel for the codefendant objected and requested that the court not recharge the jury until it had received another note with such a request. When the jury was recalled, the court told the jurors that the law did not allow it to give them written definitions of the charges but that if they had any question regarding the law it could certainly recharge them on the law if they desired. The second note soon followed, requesting "that we hear the charges read again." To conclude that this note requested anything other than a recharge, which is exactly what the parties had discussed and what the court proceeded to provide, defies logic. Before the jury reentered the courtroom, the court informed counsel of its receipt of the second note requesting a recharge, which they had just discussed, and stated, "I know they want to read the charges." The court recalled the jury into the courtroom and once the jury was present, in the presence of counsel and the codefendant, provided counsel with notice of the contents of the note once again by reading the note into the record almost verbatim, stating, "[w]e are in receipt of your last request which asks for a recharge on the charges, so we'll do that now."
The second jury note was the jury's response to the court's instruction while addressing the first jury note, to send in another note in the event the jury had other requests, such as a re-reading of the charges. Counsel was aware of the court's intended response to the second jury note because the court and counsel had discussed re-reading the charges when the parties addressed the first jury note. In fact, defendant's counsel consented to the court re-reading the charges when the court and counsel discussed the first jury note, and codefendant's counsel participated in formulating a response to the first jury note.
The second jury note which requested "to hear the charges read again" was not substantively different from, and was the jury's follow-up to, the court's instructions on the first item of the first jury note (see People v Kadarko, 14 NY3d 426, 429 [2010]; People v DeRosario, 81 NY2d 801, 803 [1993]). The court did not mislead the attorneys by informing them "I know they want to read the charges" (see Morris, 27 NY3d at 1098), as anything omitted from the jury note — the words "hear" and "again"— was insignificant (see Almonte, 81 AD3d at 565), did not alter the meaning of the jury note (see Carter, 201 AD3d at 551) and did not undermine defense counsel's ability to provide meaningful input into the court's response to the note if he so wished (see Jackson, 192 AD3d at 486-487).
The preservation rule requiring a timely objection applies here because there was no mode of proceedings error (see Morris, 27 NY3d at 1098 [any claim of error in a trial court's supplemental instructions to a deliberating jury must be preserved for appellate review with a timely objection]), and counsel's silence at a time when any error by the court could have been corrected by timely objection renders defendant's claim unpreserved and unreviewable (see Starling, 85 NY2d at 516; see also Ramirez, 15 NY3d at 826 [defendant had notice of the contents of the note and the court's response, and failed to object at that time, when the error could have been cured]; see also Wiggs, 28 NY3d at 989 ["although the court's procedure here may have been error, it was not a mode of proceedings error, and we have no jurisdiction to review it"][internal quotations and citations omitted]).
Court of Appeals and Appellate Division decisions after O'Rama make it clear that the harsh ramifications of that decision were meant to apply under extreme or unusual circumstances like those in O'Rama. O'Rama was not intended to apply in situations like we have here, where counsel was given an almost verbatim recitation of both jury notes outside the presence of the jury, and again when the jury re-entered the courtroom. The Court of Appeals has not been blind to the fact that "[d]ispensing with the preservation requirement may also invite defense counsel to manipulate the system by remaining silent while error is committed, only to complain of it later" (People v Walston, 23 NY3d at 992 [Smith, J. concurring]). Moreover, "it is one thing to be relatively flexible in the application of the rule, and another to abandon it altogether in a class of cases. To do so leads . . . to reversals based on errors that could easily have been cured if counsel had complained" (id.).
The admission of that part of the 911 tape and of the sister's statements describing the victim's injuries — such as that his face was split open and that she could see inside his mouth — were properly admitted as excited utterances (People v Herndon, 41 AD3d 130 [1st Dept 2007], lv denied 9 NY3d 876 [2007]). The 911 call was made minutes after the attack and the surrounding circumstances reasonably justify the conclusion that the sister's remarks were not made under the impetus of studied reflection (see People v Hernandez, 28 NY3d 1056, 1057 [2016]). Furthermore, it was inferable that the sister had an opportunity to personally observe the victim's injuries (see People v Cummings, 31 NY3d 204, 209 [2018]). The court improperly admitted the sister's statement identifying "Mookie" because she did not witness the attack, and it is not clear from the 911 call that she was conveying the victim's statement, as opposed to making her own statement based on preexisting knowledge about the defendant. Moreover, given the overwhelming evidence of guilt, admission of that statement was harmless error (see People v Crimmins, 36 NY2d 230, 242 [1975]).
The evidence of defendant's gang membership was highly probative of defendant's motive and his accessorial liability for the acts of the codefendant. The evidence was critical to the jury's understanding of the relationship between defendant, codefendant, and the person against whom the victim testified (see People v Cain, 16 AD3d 288, 288-289 [1st Dept 2005], lv denied 4 NY3d 884 [2005]). Further, the evidence could logically be connected to a specific material issue in the case, namely, motive and the relationship between defendant, codefendant the person against whom the victim testified, which gave rise to that motive (People v Weinstein, 42 NY3d 439, 457 [2024]). Finally, the evidence was central to the jury's understanding of an otherwise unexplained assault (People v Wilson, 14 AD3d 463, 463 [1st Dept 2005], lv denied 4 NY3d 857 [2005]). Thus, because the probative value of this evidence outweighed any prejudicial effect, the admission of the expert witness' testimony explaining the meaning of hand signs depicted on photographs by defendant and his codefendant was proper (see People v Sanders, 202 AD3d 573, 575-576 [1st Dept 2022]).
The expert witness's testimony interpreting a few slang references that were not within the ken of the average juror was proper (see People v Vanegas, 243 AD2d 261, 262 [1st Dept 1997], lv denied 91 NY2d 882 [1997]). The explanations helped the jury understand the conversations (see People v Ruiz, 166 AD3d 544, 545 [1st Dept 2018], lv denied 32 NY3d 1209 [2019]). Any claim that the expert allegedly interpreted entire conversations is unpreserved (see People v Goldman, 189 AD3d 698, 699 [1st Dept 2020], lv denied 36 NY3d 1097 [2021]).
The court providently exercised its discretion in admitting the testimony of the District Attorney's analyst based on her familiarity with the call recordings, which, along with other evidence, supported the inference that defendant's voice was on all the calls (see People v Adrian, 173 AD3d 431, 431 [1st Dept 2019], lv denied 34 NY3d 1125 [2020]). Contrary to defendant's claim, the analyst did not testify that defendant's voice was on the recorded telephone calls. Defendant failed to preserve his claim that the analyst should not have been permitted to testify to the consistency of the voices on the calls (see People v Unger, 223 AD3d 536, 536 [1st Dept 2024]). As an alternative holding, she properly testified that voices associated with the nicknames "Mookie" and "Mo" were consistent from call to call, and that this voice matched the voice on calls made from defendant's book and case number.
The court providently exercised its discretion in denying defendant's motion for the drastic remedy of a mistrial (People v Corey, 190 AD3d 620, 621 [1st Dept 2021], lv denied 37 NY3d 964 [2021]). While the detective who investigated the incident improperly testified that "C.V. states that [defendant] has always been trying to hurt him ever since C.V. testified," any prejudice was minimal because the victim was not mentioned by name and the isolated reference was immediately followed by the court's admonition. Furthermore, defendant never requested a curative instruction (see People v Karim, 185 AD3d 464, 464-465 [1st Dept 2020], lv denied 36 NY3d 973 [2020]), and any prejudice was mitigated by defendant's statements on phone calls.
Defendant did not request a limiting instruction to the introduction of the codefendant's statement implicating himself, therefore, the argument is unpreserved, and we decline to review it in the interest of justice (People v Nicholson, 26 NY3d 813, 830 [2016]). As an alternative holding, given that the statement did not expressly implicate defendant, the court was not required to give a sua sponte curative instruction (see People v Lombard, 4 AD2d 666, 668 [1st Dept 1957]).
Finally, the court providently exercised its discretion in summarily denying defendant's CPL 440.10 motion (People v Wright, 27 NY3d 516, 518 [2016]). Defendant failed to present "substantial evidence" to overcome the presumption of regularity that attaches to judicial proceedings (People v Velasquez, 1 NY3d 44, 48 [2003]). His submissions did not show that it was clear that a proceeding took place that was not transcribed, that the trial court refused to record the proceeding, or that there was significant ambiguity in the record (id. at 49). The court was entitled to summarily deny the hearing because the court reporter's affidavit — based on a review of her notes — was "unquestionable documentary proof" that "conclusively refuted" defendant's claims of mistranscription (CPL 440.30 [4] [c]). Furthermore, the arguments that defendant claims were not transcribed appear in the transcript, and it is not clear what evidence beyond the reporter's original stenographic notes might have been obtained through a hearing, especially given that seven years passed between the trial in 2016 and defendant's 440 motion in 2023 (People v Bethune, 29 NY3d 539, 543 [2017]).Conclusion
We find the court complied with the notice requirements of CPL 310.30 by providing counsel with meaningful notice of the contents of the two jury notes, and that there was no mode of proceedings error in the manner the court handled both jury notes. Further, the evidentiary rulings were proper and any errors were either unpreserved or harmless, and the court providently exercised its discretion in denying the CPL 440 motion.
Accordingly, the judgment of the Supreme Court, New York County (Gregory Carro J.), rendered April 18, 2016, convicting defendant of attempted murder in the first and second degrees and assault in the first degree, and sentencing him, as a second felony offender, to an aggregate prison term of 25 years to life, and the order, same Court, entered on or about November 29, 2023, which denied defendant's CPL 440.10 motion to resettle the trial transcript, or, in the alternative, to vacate the judgment of conviction, should be affirmed.
All concur except Pitt-Burke and Michael, JJ. who dissent in a
separate Opinion by Michael, J.

MICHAEL, J. (dissenting)

I respectfully disagree with the majority's holding that the trial court complied with CPL 310.30's notice requirement by reading the second jury note "almost verbatim" into the record. No "almost verbatim" exception has been articulated by the Court of Appeals. New York's highest court has consistently held that under CPL 310.30, a mode of proceedings error occurs where the record fails to show the court either presented or read the note verbatim to counsel before responding to it. Here, the trial court neither read the second jury note verbatim into the record nor confirmed on the record that the note was shown to counsel before it formally responded to the note. The court's failure to comply with CPL 310.30 constituted a mode of proceedings error necessitating a new trial. Accordingly, I would reverse and remand for a new trial.
CPL 310.30 provides that the jury may ask the court for further information regarding the law, content, substance, or "any other matter pertinent to the jury's consideration of the case." After "notice to both the people and counsel for the defendant" and in the presence of the defendant, the court must provide the jury with its requested information as the court deems proper (CPL 310.30).
The landmark Court of Appeals case on this issue, People v O'Rama (78 NY2d 270 [1991]), held that "notice" under CPL 310.30 means "meaningful" notice, which requires the court to provide notice to counsel and defendant of the "actual specific content of the jurors' request" (78 NY2d at 277). A court fails to provide meaningful notice "when counsel is not afforded a verbatim account of a juror's communication" (id. at 279). Failure to provide meaningful notice constitutes a "mode of proceedings error," requiring reversal even in the absence of an objection (see People v Parker, 32 NY3d 49, 60-61 [2018]; People v Nealon, 26 NY3d 152, 157 [2015]).
The O'Rama Court concluded that notice under CPL 310.30 is "best served" by following a procedure in which the court (i) marks the note as an exhibit; (ii) "read[s] [the note] into the record in the presence of counsel"; (iii) provides counsel with an opportunity to suggest responses; (iv) conveys its proposed response; and (v) after recalling the jury, reads the communication in open court before responding to the jury (see O'Rama, 78 NY2d at 277-278; People v Salas, - NY3d - , - , 2025 NY Slip Op 03603, *2 [2025]).
While, as the majority correctly notes, the Court of Appeals has cautioned that its decision in O'Rama "was not designed to mandate adherence to a rigid set of procedures" (People v Silva, 24 NY3d, 294, 299 [2014] [internal quotations and citations omitted]), only "some departures from the procedures outlined in O'Rama may be subject to rules of preservation" (Nealon, 26 NY3d at 158 [emphasis added]). For example, no mode of proceedings error was found where the trial court (i) failed to discuss the note with counsel before reading it aloud in front of the jury (see e.g. People v Morris, 27 NY3d 1096, 1097 [2016]); (ii) failed to inform counsel of its intended response to the note (see e.g. Nealon, 26 NY3d at 158); or (iii) failed to respond to the jury before accepting the verdict (see e.g. People v Wiggs, 28 NY3d 987, 989 [2016]; People v Mack, 27 NY3d 534, 537 [2016]).
Notwithstanding these exceptions, the Court of Appeals has consistently held that CPL 310.30 requires the trial court to show or recite the jury note verbatim to counsel (see People v Meyers, 33 NY3d 1018, 1027 [2019] [Garcia, J. concurring] ["had the trial court read the note nearly verbatim but failed to mention a single word, defendant would have secured an outright reversal"]; Silva, 24 NY3d at 299 ["a court must read a jury note verbatim so that the parties have the opportunity to accurately analyze the jury's deliberations and frame intelligent suggestions for the court's response"] [internal quotations and citations omitted]; Wiggs, 28 NY3d at 989 ["meaningful notice of the jury's notes [was provided] by reading the notes verbatim into the record"]; Morris, 27 NY3d at 1098 ["trial court read the precise content of the jury's note into the record . . . therefore [it] complied with its meaningful notice obligations under CPL 310.30"]; see also Mack, 27 NY3d at 543 [no mode of proceedings error where court recited jury notes verbatim]; Nealon, 26 NY3d at 157, 160 [no mode of proceedings error where court read precise contents of note into the record]; People v Kadarko, 14 NY3d 426, 428-430 [2010] [court corrected error of withholding certain contents of note by later revealing entire note to counsel]; People v Starling, 85 NY2d 509, 514 [1995] [no mode of proceedings error where court read jury note aloud]). In short, "[a]lthough not every violation of CPL 310.30 is immune from normal preservation principles, a failure to apprise counsel about the specific contents of a substantive note from a deliberating jury violates the fundamental tenets of CPL 310.30 and qualifies as a mode of proceedings error" (Silva, 24 NY3d at 300 [internal citations omitted]).
Furthermore, contrary to past holdings of this Department,[FN1] the Court of Appeals has never held that meaningful notice of a jury note is satisfied when the trial court recites the note "almost verbatim." This standard originated from First Department precedent (see People v Ramirez, 60 AD3d 560 [1st Dept 2009], affd 15 NY3d 824 [2010]) and has not been explicitly endorsed by the Court of Appeals. In Ramirez, this Court rejected defendant's CPL 310.30 claim not only based on the trial court's "almost verbatim" recitation of the note, but also upon finding that "in light of the presumption of regularity," the record "warrants an inference that the court discussed the note with counsel during a luncheon recess" (60 AD3d at 561).
Reliance on the presumption of regularity was specifically rejected by the Court of Appeals when it subsequently held in Parker that the "presumption of regularity cannot salvage an O'Rama error" where there is no "specific, record proof" that the entire contents of the note were shared with counsel (see Parker, 32 NY3d at 59-60). An "insufficient record cannot be overcome with speculation about what might have occurred" (id. at 60; see also People v Walston, 23 NY3d 986, 990 [2014]; People v Salas, - NY3d at -, 2025 NY Slip Op 03603 at *2). The court has an affirmative duty to create a record of compliance. The Court of Appeals has specifically declined to "disavow [its] holding in Walston (23 NY3d 986 [2014]) that imposes an affirmative obligation on a trial court to create a record of compliance under CPL 310.30 and O'Rama" (Silva, 24 NY3d at 300).
Here, during jury deliberations, the jury submitted two notes to the court. The first note requested: "(1) written definitions of each of the 3 charges (2) Copies of the phone transcripts (3) Video of crime (4) Photo from [W]ebster [H]all (5) Charts showing cell phone calls made." After receipt of the first note, the court stated on the record while in the presence of counsel:
The jury has sent out a note requesting a few things. The first thing they request is written definitions of each of the three charges, and informally I asked the attorneys. They're not consenting. They want copies of the phone transcripts that were used as an aid. Again, the parties will not consent . . . . Video of the crime. They have, photos from Webster Hall. They have a chart showing cell phone calls.
The court then discussed its proposed response with counsel, and then again recited the entire contents of the note when the jury returned. In this instance, the court complied with its "core responsibilities" under CPL 310.30 by following the model procedure outlined in O'Rama (see Walston, 23 NY3d at 989).
Despite following O'Rama's guidelines on the first note, the court failed to provide meaningful notice of the second note. The jury's second note requested "that we hear the charges read again." The court paraphrased the note by telling counsel, "I know they want to read the charges," and later stated to the jury, "[W]e are in receipt of your last request which asks for a recharge on the charges so we'll do that now." There is no "record proof" that the court recited the second note verbatim or provided the second note to the parties (see Parker, 32 NY3d at 60).
Before the jury submitted the second note, there was a brief discussion between counsel and the court regarding "recharg[ing]" the jury on the law. The majority contends that it "defies logic" to conclude that the second note requested anything other than a recharge because it was already discussed with the parties. But this discussion primarily centered on the jury's initial request for written definitions of the three charges. Counsel objected, and when the court proposed to instead read the charges to the jury, codefendant's counsel again objected. He proposed that if the jury wanted the court to read the charges, to let them submit another note. It is reasonable to assume that counsel believed they would have an opportunity to propose responses in the event the jury requested to hear the charges.
Moreover, the lapse in logic lies in the notion that meaningful notice hinges on what the court deems was requested in the jury note. The proper analysis under CPL 310.10 turns on whether the court fulfilled its core responsibility to provide the parties with the jury's actual and specific request (see O'Rama, 78 NY2d at 277). Meaningful notice demands that the court disclose the precise contents of the note, thereby affording the defendant an opportunity to weigh in on an appropriate response. To hold otherwise is a deviation from established precedent. Thus, the fact that the court omitted only the words "hear" and "again" does not negate the court's failure to provide meaningful notice (see Meyers, 33 NY3d at 1027; People v Morrison, 32 NY3d 951, 952 [2018]; Mack, 27 NY3d at 541-543); Nealon, 26 NY3d at 157; Silva, 24 NY3d at 299).
Simply put, the Court of Appeals has not expressly endorsed an almost verbatim, summary, or paraphrased jury note as sufficient notice under CPL 310.30. Until such guidance is provided, we are constrained by its precedent. Moreover, even seemingly minor deviations in wording like the one presented here carry significant weight by setting precedent which is fraught with risks. Providing the actual specific content of a jury note eliminates the need to determine the extent to which a summary or a paraphrased note is sufficient for CPL 310.30 purposes.
Given the trial court's violation of CPL 310.30's notice requirement, defendant's conviction should be reversed and remanded for a new trial. As this error alone entitles defendant to a new trial, I do not address defendant's other claims.
Judgment, Supreme Court, New York County (Gregory Carro J.), rendered April 18, 2016, and order, same Court, entered on or about November 29, 2023, affirmed.
Opinion by Mendez, J. All concur except Pitt-Burke and Michael, JJ. who dissent in a separate Opinion by Michael, JJ.
Renwick, P.J., Kapnick, Mendez, Pitt-Burke, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 13, 2026

Footnotes

Footnote 1: (see e.g. People v Ramirez, 60 AD3d 560, 561 [1st Dept 2009], affd 15 NY3d 824 [2010]; People v Jackson, 192 AD3d 486, 486-487 [1st Dept 2021], lv denied 37 NY3d 957 [2021]; People v Carter, 201 AD3d 551, 551 [1st Dept 2022], lv denied 38 NY3d 949 [2022]; People v Matthews, 228 AD3d 521, 522 [1st Dept 2024], lv denied 42 NY3d 1021 [2024])